## Hogan et al. v. Donohue.

1. *Measure of Damages—Market Price of a Commodity.*—Where the market price of a commodity is in issue, and no market price at the place of delivery has been established by the usual mode of trade, it is competent to hear proof of prices in adjacent and controlling markets.

2. *Measure of Damages—Board of Trade Prices.*—The price of the commodity on the Chicago Board of Trade, does not always represent its true market value. Often prices there are exaggerated as well as depressed by the most dishonest and unfair means.

3. *Measure of Damages—Market Price of Grain.*—In an action between the vendor and vendee for the price of corn, it was contended upon one hand that the market price, at the place of delivery, could be controlled by the Board of Trade at Chicago, less the cost of transportation, etc. On the other hand, the contrary was contended; an offer was made to prove that the grain was cornered on the Board of Trade on that day, and that before the prices there prevailing could be obtained, it must be inspected in an elevator in Chicago, a warehouse receipt issued and duly registered. It was held that the proof offered was competent and that the court erred in refusing it.

**Memorandum.**—Action of assumpsit. Goods sold and delivered. Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

MAYO & WIDMER, attorneys for appellants.

BREWER & STRAWN, attorneys for appellee.

OPINION BY THE COURT, HARKER, P. J.

Appellants, dealers and shippers of grain, owned an elevator and warehouse at Seneca, Ill. At various times during the two years following the 27th of September, 1888, appellee delivered to them for storage 4,170 bushels of corn and 1,036 bushels of oats under the agreement that whenever the market price at Seneca suited him he might sell to them. Advances were made from time to time, on the grain stored, which were subsequently embodied in two notes, one for $1,655.50, of date December 26, 1889, and the other for $430, of date June 12, 1890, and a stated book account of $217.48. On the 10th of September, 1891, appellee sent word to appellants to close out the corn at 62 cents, whenever the market price reached that figure. On the 27th of November of that

year, he applied to appellants for a settlement, and insisted upon being allowed 70 cents per bushel for the corn because cash corn was, on that day, 75 cents on the Chicago Board of Trade. Appellants refused to allow him more than 50 cents per bushel, claiming that was the price in Seneca, and that the price on the Board of Trade was a "cornered price." The parties were unable to come to an understanding and on the 17th of the following December, appellants took judgment on the notes for $2,207.50, upon the power of attorney to confess, contained therein. The judgment was opened, and upon a trial had in the Circuit Court, appellee, on his plea of set-off, recovered judgment for $215.40.

The controverted question in the case was over the market price of corn at Seneca, on the 27th day of November, 1891. It was shown by the testimony of appellants, Martin Hogan, Daniel P. Cahill, John Burke, and Philander Graves, a competitor of appellants in the grain business at Seneca, that the market price of old corn in that place on that day was 50 cents per bushel. It was shown by other witnesses that the market price in Ottawa, twelve miles further west, was from 46 to 50 cents, and on board the cars at Chicago, from 44 to 46½ cents per bushel. It was also shown that on the Chicago Board of Trade it, on that day, opened at 80 cents, went to 75 cents, back to 80 cents, and then down to 73 cents per bushel.

Seneca is a small place, and there were at the time but two firms there dealing in grain. Under the circumstances it was competent to hear proof of the market value of corn in markets within the vicinity of Seneca, not for the purpose of fixing the price between appellant and appellee, but for the purpose of showing the market price at Seneca. It was claimed by appellee that the dealers had arbitrarily fixed the price there at fifty cents. Where the market price of a commodity is in issue, and no market price at the place of delivery has been established by the usual modes of trade, it is competent to hear proofs of the price in adjacent and controlling markets. Grand Tower Mining, Manufacturing and Transportation Co. v. Phillips, 23 Wall. 471; Richmond v. Bronson, 5 Denio, 55; Cahen v. Platt, 69 N. Y. 348.

On the day mentioned, there was a difference between the price of corn on board the cars at Chicago and on the Board of Trade of about thirty cents per bushel. Nothing but an unhealthy condition of affairs on the Board of Trade could have produced so great a disparity. Appellants offered to prove that corn was cornered on the Board of Trade on that day, and that before the price there prevailing could be obtained it must be inspected in the elevators in Chicago, a warehouse receipt issued and duly registered, but the court refused such proof. In this there was error. It is a notorious fact that the price of a commodity on the Chicago Board of Trade does not always represent its true market value. Often prices there are exaggerated as well as depressed by the most dishonest and unfair means.

From all the proofs in the record we are of the opinion that the market price of corn in Seneca, on the 27th of November, 1891, was fifty cents per bushel. The jury allowed between sixty and seventy cents per bushel.

We see no serious objection to the instructions. In view of the testimony as to the price of corn prevailing on the Board of Trade and costs of transportation, the fourth instruction given for appellee was proper.

For the error of the court in denying appellants the right to make the proof offered, and because the jury allowed appellee too much for his corn, the judgment must be reversed and the cause remanded for another trial.