JOHNSON-BRINKMAN COMMISSION COMPANY, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 20, 1896.

1. **Measure of Damages**: MARKET PRICE V. MARKET VALUE: CONVULSIVE MARKET: EVIDENCE. The market price and the market value of an article of commerce are ordinarily the same; and the market price is evidence of market value, but not *conclusive*.

2. **Shipper**: COMMON CARRIER. A shipper, who, with knowledge of the carrier, ships to the market for sale, which he fails to reach through the carrier's negligence, is entitled to base his claim for damage on the market price regardless of the actual value.

3. **Shipper**: SPECIAL PRICE. So a shipper who is not connected with the fraudulent or immoral purpose of those who cause extraordinary convulsions of the market, thereby rendering it necessary for certain individuals to pay high prices, which are not the market prices or market values, may recover of the carrier for negligent failure to get the commodity to destination, provided the carrier was aware of his purpose.

4. ———: ———: ———. The law regulating the measure of damages contemplates the range of the entire market and the average of prices running through a reasonable period of time and not sudden and transient inflation and depression of prices.

5. ———: ———: ———: CORNER. But where the shipper sues the carrier on the gound of negligently delaying the arrival of his goods on the market for the difference between the market price on the day they should have arrived and such price on the day he sold, the market price is necessarily that price which obtains in the market generally and not a price which some individuals, for mere fancy or pressing necessity, such as "shorts" in a "cornered" market will pay.

*Appeal from the Jackson Circuit Court.*—Hon. C. L. Dobson, Judge.

Reversed and remanded.

*Boyle, Priest & Lehmann* and *Geo. S. Grover* for appellant.

The price of $1 per bushel for number 2 corn, which obtained for a portion of May 31, 1892, on the Chicago board of trade, was not, under the circumstances proven, and offered to be proven, evidence of the market value of corn in Chicago at that time, and should not have been taken as the basis for estimating the damages sustained by plaintiff. Sedgwick on Damages, sec. 249; *Smith v. Griffith*, 3 Hill, 333; *Kountze v. Kirkpatrick*, 72 Pa. St. 376; *Hogan v. Donahue*, 49 Ill. App. 432; *Lovejoy v. Michels*, 88 Mich. 15.

*Gage, Ladd & Small* for respondent.

It is well settled that the measure of damages in a suit against a carrier for negligently delaying transportation of goods which are to be sold in the market on arrival, is the difference between the market price of the goods on the day they should have arrived, and

the market price of the goods, if they have depreciated, on the day they did arrive. *Blanchard v. Railroad*, 60 Mo. App. 267; *Leonard v. Railroad*, 57 Mo. App. 366; *Leonard v. Railroad*, 54 Mo. App. 293; 2 Sedgwick on Damages [8 Ed.], sec. 854, and cases cited; *King v. Woodbridge*, 34 Vt. 565; *Sisson v. Railroad*, 14 Mich. 489; *Faulkner v. Railroad*, 50 Mo. 385; Hutchinson on Carriers [1 Ed.], secs. 771, 772, 773; *The Calidonia*, 157 U. S. 139.

ELLISON, J.—Plaintiff delivered to defendant, on May 23, 1892, a car load of corn, to be carried from Kansas City, Missouri, to Chicago, Illinois. The delivery was in time to have arrived in Chicago, if defendant had been diligent in transportaion, so as to have been prepared for and put on the market and sold on the thirty-first of May. But defendant, having unreasonably delayed the corn, it did not arrive in time for the market of that day, and plaintiff was compelled to, and did afterward, on June 1, sell for a lower price, whereby he alleges he was damaged in a sum representing the difference between the market price on the day it should have arrived and such price on the day he sold. The case stated in the petition is a claim for damages, based on the difference in the market price. The judgment of the trial court was for the plaintiff. The evidence showed that there was no market on the twenty-ninth and thirtieth of May, the former being Sunday and the latter Decoration Day; that on the twenty-eighth the market price for corn was between forty-five and forty-nine cents, and that that was the market value and price on the latter part of the thirty-first, and for several succeeding days. But during a portion of the thirty-first, it sold at the board of trade for as much as $1 per bushel. So, in short, it may be stated that the case shows that just before the thirty-

first of May and at the close of that day, and for several days thereafter, the market price for corn was between forty-five and forty-nine cents per bushel; but that during a portion of said day it sold at the board of trade for $1 per bushel. It does not appear that it sold for that price at any other place in said city.

The defendant offered evidence tending to prove that the price of $1 per bushel, at which corn sold on a portion of the thirty-first, was not the real value of the corn in the Chicago market, and that such price was not made as the result of any natural or legitimate demand—that it was a fictitious price, brought about by option dealers and manipulations of the market at the board of trade—that it was the result of what is known, in the parlance of such manipula-tors, as a "corner." The trial court excluded such evidence.

It may be said that the case presents two questions: One, whether plaintiff is entitled to recover the difference in the market price of the corn, as claimed in his petition, as distinguished from market value; the other, whether the high price at which he showed corn sold on May 31, was the market price.

The market price and market value of an article of commerce are ordinarily the same, and, therefore, generally and ordinarily, the two terms mean the same thing, and courts ordinarily permit the market price of an article to be the measure of its market value. The market price is evidence of market value, but it is not conclusive. There are instances—instances of more frequent recurrence of late years—where the market price is not the market value, as understood in the law. Tiedeman on Sales, sec. 47; *Acebel v. Lacy,* 10 Bing. 376; *Kountze v. Kirkpatrick,* 72 Pa. St. 376. The maket value is that which arises from the ordinary transactions of buying

VOL. 64 app—38

and selling, and, doubtless, includes the ordinary vicissitudes of prices in business. In speaking of the market value of land, the supreme court of Iowa said that the market value depended upon sales as they ordinarily occurred, and that the "extraordinary or unusual can not be regarded as rules by which human transactions, or conduct, can be squared." *Everett v. Railroad*, 59 Iowa, 243.

In *Acebel v. Levy*, 10 Bing. 376, it is said: "A contract to furnish a cargo at a reasonable price means such a price as the jury shall, under all the circumstances, decide to be reasonable. This price may, or may not, agree with the current price of the commodity at the port of shipment, at the precise time when such shipment is made. The current price of the day may be highly unreasonable from accidental circumstances, as on account of the commodity having been purposely kept back by the vendor himself, or with reference to the price at other ports in the immediate vicinity, or from various other causes."

When there are extraordinary convulsions of the market, brought about by illegal combinations, or by the manipulations of parties dealing in what are known as "options," or where the market is "cornered" on particular articles of property, the price which may be forced (whether up or down) on the article in question, can not be said to be the market value of such article, even though it may be so general in its application and effect as to be the market price. The general market price of property in a locality may be fictitious, and may be suddenly brought about by unlawful combinations for illegal or speculative purposes, whereby prices in the general market are made to double or quadruple within a few hours, when, at the same time, there has been no change in the quantity or quality of the article thus enhanced, or any legitimate demand at

all commensurate with the advanced price. So, a market price may be made of articles which are manufactured or produced by a limited number of persons, by the unlawful combination of such persons in arbitrarily fixing a price upon such property, regardless of its value, or the ordinary effect of competitive trade. *Lovejoy v. Michels*, 88 Mich. 15. Courts know these things as a part of the commercial history of the country, and it is not improper for them to heed what has become common knowledge. Did the prices (even if they could be said to be market prices) which ruled on the stock board in New York, on "black Friday," represent the market value of the stocks on that day? No one would say so. In speaking of the market value of articles of personal property, as a measure of damages as distinguished from the price in the market, Chief Justice NELSON, in *Smith v. Griffin*, 3 Hill, 333, said: "I admit that a mere speculating price of the article, got up by the contrivance of a few interested dealers, with a view to control the market for their own private end, is not the true test. The law, in regulating the measure of damages, contemplates a range of the entire market, and the average of prices as thus found, running through a reasonable period of time. Neither a sudden and transient inflation or depression of prices should control the question. These are often accidental, produced by interested and illegitimate combinations for temporary, special, and selfish objects independent of the influences of lawful commerce—a forced and violent perversion of the laws of trade, not within the contemplation of the regular dealer, and not deserving to be regarded as a proper basis upon which to determine the value, when the fact becomes material in the administration of justice." That case was cited with approval in *Durst v. Burton*, 47 N. Y. 175. The same just principle was announced in an able and compre-

hensive opinion by the supreme court of Pennsylvania, in *Kountze v. Kirkpatrick*, 72 Pa. St. 376, as well as in *Hogan v. Donahue*, 49 Ill. App. 432. The reasoning in those cases is so just and clear that we have no hesitation in stating it to be the law, that in all cases where the market value is the correct measure of damages, the market price which has been brought about in the unlawful manner indicated will not be considered the market value.

But the foregoing cases are, in important particulars, not applicable to this case, as it has been presented by counsel for plaintiff. Plaintiff seeks to recover the difference in the *market price* when the corn arrived at Chicago and when it should have arrived. Neither of those cases is of this sort. Those cases concerned a buyer or seller of property at an unnamed price; or one whose property had been damaged in shipment but had not been shipped for sale on the market. In such cases the market value is the measure of damages. This is for the reason that the injured party can obtain or replace the property with the amount recovered as damages—a thing which can always be done except in the short and transitory periods of market convulsions.

But plaintiff is not in such a situation. He did not want the property, except for the purpose of sale on a certain day, which defendant knew, and he was deprived of the power of sale on that day by reason of a negligent delay in transportation. He did not want the market value of the corn, wherewith he might have resupplied himself. The only full measure of his recompense, according to his petition, is the market price which he alleges he would have obtained, had it been delivered without delay. So, in general terms, we hold that the shipper of a commodity to the market for sale, who fails to get it to the market through the negligence of the carrier, is entitled to base his claim for

damage on the market price, regardless of actual value. A market price far beyond the value of an article, may be brought about in various ways, innocent in themselves. As, by a sudden and apparently well founded rumor of war, which does not occur. Or, by a mistaken opinion as to the effect of a drouth, and like causes, which have not originated in a wrongful purpose. And a market price much beyond the value may even be brought about by an unlawful design or combination, whereby a commodity is made difficult to obtain and whereby it sells for the fixed price to all who deal in it. Here the shipper is also entitle to recover the market price, brought about in that manner, if he is not connected with the unlawful cause; and this without regard to the actual market value of such property. These statements are based on the plain proposition that a seller, acting *bona fide*, is entitled to sell at whatever price a buyer will pay. As before stated, the plaintiff claims in his petition that he desired to sell at the market price, and he asks as damages the difference in the market price on the day the corn should have arrived in Chicago, and the day it was sold.

It therefore only remains to be seen whether there has been a proper trial of the cause, on the theory which we have indicated as applicable to the case stated in the petition.

It appears that at the board of trade in Chicago there were certain individual dealers, who had, at times previous, sold corn, which they did not own or have in possession, who were called upon to deliver, and in an endeavor to obtain the grain for delivery, they (who seem to be known as "shorts"), laboring under a necessity peculiar to them in their situation, were paying, on May 31, as much as $1 per bushel for corn which graded as number 2. On account of the ruling of the court on the evidence, we must assume that this

was not the natural, or legitimate price, but was a price offered and paid, for a few hours, by a limited number of individuals, who were laboring under a pressing necessity, peculiar to themselves, and which did not apply to the public generally. A price which was more than double what it was just before and after and which did not obtain with any other persons, or at any other place, even in the city of Chicago. One of the plaintiffs testified, that "somebody had bought a good deal of corn and other people had sold it to them, and those other people wanted corn to fill their sales." Another of the plaintiffs testified that the price was solely due to a "corner" of the market, and that it originated on the board of trade at Chicago, and that the corner collapsed, necessarily." We do not regard that price as the market price. A market price, even when applied to a shipper desiring to sell on the market, is, necessarily, that price which obtains in the market generally and not a price which some individuals, from mere fancy of an article, or from some pressing necessity, peculiar to themselves, will pay. Suppose a person, for purposes of his own, wants at a certain time one or more shares of the stock of a corporation, and his anxiety to obtain it is such that he pays far beyond its worth and what no others will pay. Can it be said that the price he pays is the market price of the stock of such corporation? Suppose some large manufacturing establishment was in pressing need of some article of material which it was compelled to have in order to get out goods to fill prior orders; and under such necessity would pay an abnormal price, out of all proportion to value and beyond what anyone else would pay, or was paying, could it be called the market price? We think not. Again, suppose that one or more of the large packing establishments in Chicago, on account of some sudden and extraordinary necessity,

should, for a few hours, pay $12 a hundred for hogs, when the price and value with such establishments, just before and just after (and with all others during the whole time) was only $5. Would $12 be considered the market price? Certainly not. It would be a *special price, having a special cause,* but in no way based on value, or the general market.

It follows from the foregoing views that the cause was not tried on a proper theory. If plaintiff's case had been founded, as was, in substance, stated during the course of the argument, on the proposition that he expected that an extraordinary and unusual price would be paid by a class of individuals at the board of trade in Chicago, on account of a corner in the market, whereby they were compelled to have the grain, and that he endeavored to ship his corn to said city in time to sell to such parties, then a different case would have been presented for our consideration. Whether plaintiff, knowing of the unlawful combination which brought about the extraordinary results on the board of trade on the thirty-first of May, would find any impediment to his recovery of damages on account of failing to get his grain delivered in time to become a part of the trade, is a question which has not been examined and which it is unnecessary to decide. At all events, plaintiff may possibly desire to amend his petition and thereby place his case on somewhat different ground from that now stated, and we will therefore reverse the judgment and remand the cause, so that he may not be deprived of an opportunity to do as may seem to be proper. All concur.