## UNITED STATES v. NEW RIVER COLLIERIES CO.

(Circuit Court of Appeals, Third Circuit. December 7, 1921.)

No. 2736.

War ☞14—Market price, notwithstanding abnormal conditions, held "just compensation" for coal requisitioned.

Under Lever Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), entitling owner of goods requisitioned by the United States government to "just compensation" therefor, and in view of Const. Amend. 5, providing that no private property can be taken for public use without "just compensation," a coal dealer engaged largely in export trade could recover from the government, for coal requisitioned by it, the price he could have received therefor in the export market, and was not limited to cost plus reasonable profit, notwithstanding the abnormal market caused by war conditions and governmental restrictions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Just Compensation.]

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the New River Collieries Company against the United States. Judgment for plaintiff, and defendant brings error. Affirmed.

Elmer H. Geran, U. S. Atty., of Trenton, N. J., and F. M. P. Pearse, Asst. U. S. Atty., of Newark, N. J. (Howard W. Ameli, of counsel), for plaintiff in error.

Ira J. Williams and Charles L. Guerin, both of Philadelphia, Pa., and F. R. Foraker, of New York City (Brown & Williams, of Philadelphia, Pa., of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. This writ brings here for review a judgment of the District Court entered upon the verdict of a jury in favor of the New River Collieries Company in several suits brought to recover from the United States just compensation for private property taken for a public use. The sole question is the measure of compensation.

The parties, in their conduct, followed strictly the provisions of the Act of Congress commonly known as the Lever Act (approved August 10, 1917, 40 Stat. 276 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r]). The United States, through the Navy Department, requisitioned a large tonnage of coal belonging to the Collieries Company, at Hampton Roads, Virginia, at different times during a period commencing in September, 1919, and ending in February, 1921, and tendered payment at a price named by the Navy Department. The Collieries Company, being dissatisfied with the tender, declined it, and brought these actions under the section of the Act which gave the District Courts of the United States jurisdiction to hear and determine claims for just compensation for property taken by the Government in the exercise of its power of requisition. Section 10 (section 3115⅛ii).

At the trial, both parties offered evidence in support of what they respectively regarded as the true measure of compensation, fully realizing that in providing that compensation be made for private property taken for public use the Congress intended compensation of a character that would conform with the "just compensation" prescribed, in like event, by the Fifth Amendment to the Constitution. United States v. Cohen Grocery Co., 255 U. S. 88, 41 Sup. Ct. 298, 65 L. Ed. ——.

The plaintiff introduced evidence which, not being disputed, proved that at the place and during the time the Government took the plaintiff's coal there were two markets for coal, a domestic market and an export market, the latter being the higher; that both markets were affected by war conditions still prevailing and by government restrictions still in force, though in both markets supply and demand were the controlling factors; that the business of the plaintiff was chiefly in the export trade; that the export demand during the time and at the place in question was such that, but for the action of the Government in requisitioning its coal, it could have sold its coal for export at prices prevailing for spot deliveries. On this evidence the plaintiff took the position that "just compensation" means the fair market price of the property at the time and place of the taking, if a market exists and a price is shown.

The United States advanced the proposition that just compensation is to be determined by the value of the property; that market price, while evidence of value, is not conclusive, Johnson-Brinkman Commission Co. v. Wabash R. R. Co., 64 Mo. App. 590, 595; United States v. Nahant, 153 Fed. 520, 82 C. C. A. 470; therefore other evidence of value is admissible. The other evidence which the Government offered in proof of value was the cost of the coal to the plaintiff, reckoned on figures supplied by the Federal Trade Commission, plus what the Navy Department regarded as a reasonable profit; also the prices for

contract coal in the domestic market which were lower than prices for spot coal for export. In addition the Government contended that both markets for coal at Hampton Roads during the period in question were, because of war conditions, purely speculative, and that prices there current in no way reflected the reasonable value of the coal itself. Ruling that the plaintiff was entitled to recover the fair market price for its coal according as the jury might determine its value from the evidence, which, not being controverted, showed an export market with going quotations, the court refused to admit the testimony offered by the Government. On the exception noted this writ was founded, raising squarely the question of the rule of just compensation in such case.

Reading into the Lever Act the words of the Fifth Amendment to the Constitution—"Nor shall private property be taken for public use, without just compensation"—it is evident that the Congress intended that for property taken, whether real or personal, "the compensation must be a full and perfect equivalent." Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Kanakanui v. United States, 244 Fed. 923, 157 C. C. A. 273. Such an equivalent is not the value of the property to the Government for its particular use but is its fair market value for all available uses. United States v. Chandler-Dunbar Co., 229 U. S. 53, 80, 33 Sup. Ct. 667, 57 L. Ed. 1063; Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; United States v. Bank (D. C.) 250 Fed. 299, Ann. Cas. 1918E, 36. No one, we imagine, questions this rule. The difficulty, however, is in finding the fair market value, a difficulty which depends largely on the character of the property taken, whether realty or personalty. If it be land, varied considerations enter, as shown by cases cited in the briefs, not here applicable. If it be a commodity, the task is less complex, yet fraught with more or less difficulty according as the commodity is or is not readily saleable and as there is or is not a market where like commodities are openly traded in. If, further, the commodity be a staple, which, like coal, is produced for sale and consumption, not for retention and long use, the difficulty is again reduced, for in such instance the first—and sometimes the last—inquiry to be made in reckoning its value is its worth as an article of sale. If it be an article commonly traded in on a market and it is shown that at the time and place it was taken there was a market in which like articles in volume were openly bought and sold, the prices current in such a market will be regarded as its fair market value and likewise the measure of just compensation for its requisition.

But the Government contends that the coal market in question, being still under war influences and still restricted by government regulations, was not a market from whose prices a fair market value of the commodity traded in could be validly determined, citing cases in which courts have held, quite properly, that market value is not to be determined by market prices brought about by some peculiar accidental circumstance, or some sudden or temporary turn in the trade, or influenced by some pressing necessity of seller or buyer, producing prices out of all proportion to the value of the articles and beyond what

anyone else, not thus affected, was willing to pay. Johnson-Brinkman Commission Co. v. Wabash R. R. Co., 64 Mo. App. 590; Lawrence v. Boston, 119 Mass. 126, 128. While this is the law, we think it does not apply to this case. Admittedly, the coal market at Hampton Roads was affected by war conditions and government restrictions. The market there was abnormal in the sense of being different from the market before the war. While war did produce a condition where the demand greatly exceeded the supply, it was not a condition prevailing on particular days at the particular place at which the Government requisitioned the plaintiff's coal, but was a general condition prevailing wherever coal was bought and sold. War did not destroy the coal market; it made a market of another kind, which, though abnormal in comparison with the peace market, was firmly established and long continued. The prices at which coal was regularly sold and bought in such a market under its vicissitudes constituted, we think, valid evidence of its fair market value. But there were at Hampton Roads two markets for coal, domestic and export. We are further of opinion that the plaintiff, in seeking evidence of the fair market price for coal to prove the fair market value of its coal, was entitled to avail itself of the price in that market in which, but for the action of the Government, it could, and according to the habit of its business it probably would, have sold its coal. That was the price in the export market. It follows therefore that the Government's evidence of a value for the plaintiff's coal fixed by the Navy Department on a basis of cost plus a reasonable profit and of prices in the domestic market for contract coal, would not, if admitted, have reduced the valuation of the plaintiff's coal under the rule here found applicable and would not, in consequence, have served any evidential purpose. The court's rejection of the evidence, therefore, was not error.

The judgment below is affirmed.