## L. VOGELSTEIN & COMPANY, INC. *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 269.    Argued March 5, 6, 1923.—Decided May 21, 1923.

Just compensation for copper taken by the United States for war purposes under the Act of June 3, 1916, c. 134, §§ 120, 123, 39 Stat. 215, is to be measured by the market value of the copper at the time of the taking, and not by higher prices which the owner was obliged to pay under long time purchase contracts.    P. 340.

56 Ct. Clms. 362, affirmed; motion to remand denied.

APPEAL from a judgment of the Court of Claims.

*Mr. Alfred G. Reeves* and *Mr. Frederic D. McKenney,* with whom *Mr. Russell H. Robbins* was on the brief, for appellant.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck, Mr. Assistant Attorney General Lovett* and *Mr. J. Robert Anderson,* Special Assistant to the Attorney General, were on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Between September 28, 1917, and February 1, 1918, the United States obtained from appellant 12,542,857 pounds of copper and paid 23½ cents per pound therefor.    By

its petition, appellant asks judgment for $424,196.54, being 3.381977 cents per pound, in addition to the price paid. The Court of Claims made findings of fact, and as a conclusion of law held that appellant was not entitled to recover, and dismissed the petition. From that judgment this appeal is taken.

The Court of Claims found that the market price of copper was 23½ cents per pound. The United States insists that payment of the market price was just compensation. The appellant claims that there was no express contract of sale; that the copper was taken pursuant to mandatory orders, and that it did not waive its right to just compensation. It submits that the finding of the Court of Claims, that after September 20, 1917, the market price of copper was 23½ cents per pound, must be read as referring to a mere fiat price fixed by the United States, and that it does not mean the market price as fixed by supply and demand and other elements in normal trading in copper. It asserts that the necessary cost of the copper to it was 26.881977 cents per pound, and demands that price.

It appears from the findings that appellant purchased ores, minerals and metals, had them smelted and refined, and sold the refined products. It was not a mine owner, operator, producer or refiner. On September 20, 1917, at close of business, it had on hand 43,851,042 pounds of copper. It had purchased 34,687,579 pounds as unrefined copper under long term contracts, and 9,163,463 pounds as refined copper in the open market. The average cost to appellant was 26.881977 cents per pound. Out of the stock then on hand, it had sold 31,308,183 pounds at 26.34389 cents per pound. There remained 12,542,857 pounds.

It further appears that some time before September 21, 1917, an agreement was made by the War Industries Board with copper producers fixing a price of 23½ cents

per pound for copper, and this agreement was approved by the President on that date. September 28, 1917, Vogelstein, who controlled appellant, attended a meeting of copper producers and government representatives and placed in nomination the persons who were chosen at that meeting as members of a committee to act for the copper producers in carrying out the agreement of September 21st, and to coöperate with government representatives in securing performance of the agreement and to take the necessary measures to that end. The United Metals Selling Company was the sales agent for copper producers, and the plan adopted for obtaining the copper for the United States was for the War and Navy Departments to send orders and shipping directions to the Selling Company. The orders were sent to the producers' committee, which returned them to the Selling Company with the name of the producer or dealer on whom the orders should be made. Thereupon the Selling Company placed its own order with the producer or dealer named, requesting the shipment to be made, and stating the price to be paid as 23½ cents per pound. The Selling Company from time to time, beginning April 6, 1917, made a number of contracts for the furnishing of copper to the United States. The first two, respectively dated April 6 and April 21, covered 45,100,000 pounds at 16.6739 cents per pound. Later contracts covered 297,826,734 pounds at 23½ cents per pound. Between September 28, 1917, and February 1, 1918, the period in which appellant's copper here involved was obtained, about 283,000,000 pounds were furnished the United States under these contracts. In appellant's petition it is stated that since September 21, 1917, it sold and delivered to the United States at least 25,000,000 pounds of copper, which cost it substantially 23½ cents per pound, the price it received from the United States. Appellant's contention that there was no market price other than that fixed by the fiat of

the United States is without support. The price so found uniformly prevailed during the period in question. Appellant coöperated with others having copper to sell in putting into effect and maintaining that price. The finding of the Court of Claims is plain and cannot be read as referring to a mere fiat price. It is not impaired, but is supported and confirmed by other findings. The appellant is bound by it.

It contends that when the price was fixed at 23½ cents per pound, it unavoidably had on hand the 12,542,857 pounds of copper in question; that this copper was requisitioned and taken upon mandatory orders pursuant to §§ 120 and 123 of an Act approved June 3, 1916, c. 134, 39 Stat. 213, 215, and that it protested against the price. It moves to remand the case with directions to find facts with reference to these claims. Assuming all these matters of fact in favor of appellant and considering the case as if they had been so found by the Court of Claims, the United States' contention that appellant has received just compensation must be sustained. The market price was paid. The market value of the copper taken at the time it was taken measures the owner's compensation. *Seaboard Air Line Ry. Co.* v. *United States,* 261 U. S. 299; *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53, 80, 81; *Boom Co.* v. *Patterson,* 98 U. S. 403, 407; *United States* v. *New River Collieries Co.,* 276 Fed. 690, affirmed this day, *infra,* 341. The higher prices, if any, paid by appellant for the copper it was compelled to take on long time purchase contracts are not evidence of the value of the copper at the time it was obtained by the United States. The United States is under no obligation to make good the loss. Appellant would be entitled to the gain if it had purchased at less than the market price at the time of taking.

*The motion to remand is denied, and the judgment appealed from is affirmed.*