CLEVELAND PROVISION CO. v. WEISS, Ex-Collector of Internal Revenue, with five other cases.

(District Court, N. D. Ohio, E. D. January 14, 1925.)

Nos. 12732, 12765, 12778, 12801, 12802, 12824.

Internal revenue ⬡⟩19(1)—Certificates of no-par value stock, issued by corporation in exchange for other certificates canceled, not subject to stamp tax.

No-par value stock, issued by a corporation in exchange for its stock having a par value, as authorized by Gen. Code Ohio, §§ 8728—1 to 8728—11, with no change in the capital or assets of the corporation, or in the interests of its stockholders, is not an original issue, and the certificates are not subject to stamp tax, under Revenue Act 1918, § 1107 (Comp. St. Ann. Supp. 1919, § 6318p), or Revenue Act 1921, § 1107 (Comp. St. Ann. Supp. 1923, § 6318p).

At Law. Actions by the Cleveland Provision Company against Harry H. Weiss, former collector of Internal Revenue, and against C. F. Routzahn, Collector of Internal Revenue, with four other actions by the Morgan Lithograph Company, by the F. B. Stearns Company, by the Newton Steel Company, and by the Stambaugh-Thompson Company against said Routzahn. On demurrers to petitions and amended petitions. Demurrers overruled.

In Nos. 12732, 12765, 12778, and 12824:

Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, for plaintiff.

A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, for defendant.

In Nos. 12801 and 12802:

Kennedy, Manchester, Conroy & Ford, of Youngstown, Ohio, for plaintiff.

A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. The demurrers in these several cases all present the same question; i. e., the liability of the plaintiff corporations for stamp tax on alleged original issues of capital stock. Cases 12732, 12824, 12765, and 12778 arise under the War Revenue Act of 1918, approved February 24, 1919. 40 Stat. 1057, 1133, 1135; U. S. Comp. Stat. Supp. 1919, §§ 6318i, 6318p. Cases 12801 and 12802 arise under War Revenue Act approved November 23, 1921. 42 Stat. 227, 301, 303; U. S. Comp. Stat. Supp. 1923, §§ 6318i, 6318p. The taxes were assessed, paid under protest, and application made for return and refused.

The pertinent facts are similar in all these cases. All are Ohio corporations. The capital of each was evidenced by outstanding certificates of the par value of $100 each. Several had outstanding certificates for preferred as well as common stock. All were reorganized pursuant to the provisions of the no-par value corporation stock act of Ohio. Sections 8728—1 to 8728—11, inclusive, General Code. In 12801, which may be taken as typical of all, the Stambaugh-Thompson Company had issued an outstanding $421,700 of stock, divided into 4,217 shares, of which 1,217 were preferred and 3,000 common stock, all of the par value of $100 each. On December 29, pursuant to said act, the necessary corporate action was taken and the necessary certificates filed, as required by law, to convert its par value common stock into common stock having no nominal or par value. It fixed, as is permitted by the act, the terms upon which the outstanding shares of common stock should be called in and exchanged at four shares of no-par stock for each outstanding share having a par value of $100. In effecting this reorganization, no other change or readjustment took place with respect to the capital of the corporation. No additional contribution to the capital was made in connection therewith by its stockholders, and no part of the surplus, if any, was transferred to capital account and distributed with or as a part of the reissue. The exchange upon this basis was made. The net result was to leave the corporation assets, its capital and surplus, and its stockholders in precisely the

same situation as before, except that each holder of a certificate of common stock of $100 par value had in lieu thereof at the end of the transaction four shares without nominal or par value.

Nothing in substance different happened in any of the cases. In 12732 and 12824, the Cleveland Provision Company reissued 7½ shares of common stock without nominal or par value in exchange for each share of common stock having par value of $100. In 12765, the Morgan Lithograph Company reissued 10 shares of common stock having no nominal or par value in exchange for each share of common stock having a par value of $100. In 12778, the F. B. Stearns Company reissued two shares of common stock having no nominal or par value in exchange for each share of common stock having a par value of $25. In 12802, the Newton Steel Company reissued 6¼ shares of common stock having no nominal or par value in exchange for each share of its common stock having a par value of $100.

Such, in brief, are the cases made by the petitions demurred to. The questions of law involved have been considered, and in my opinion settled, at least in principle, in the following cases: Edwards v. Wabash Ry. Co. (2 C. C. A.) 264 F. 610; Trumbull Steel Co. v. Routzahn (D. C.) 292 F. 1009; American Laundry Mach. Co. v. Dean (D. C.) 292 F. 620; West Virginia Pulp & Paper Co. v. Bowers (D. C.) 293 F. 144; Bowers v. West Virginia Pulp & Paper Co. (2 C. C. A.) 297 F. 225, writ of certiorari denied, 265 U. S. 584, 44 S. Ct. 459, 68 L. Ed. 1191; Standard Mfg. Co. v. Remer (D. C.) 300 F. 252. These cases are in accord as to the proper construction of the several provisions of the two War Revenue Acts under which these stamp taxes were assessed and collected. No useful purpose will be subserved by reviewing these cases, or again discussing in detail the reasons upon which the conclusions therein were reached.

I adhere to the views expressed by me in the Trumbull Steel Co. Case, and concur in all that is said in the opinion in the Edwards Case. The long departmental construction of similar provisions in War Revenue Acts prior to the change of departmental construction now sought to be enforced, and the re-enactment of the War Revenue Acts of 1918 and 1921 after that departmental construction, and also after the judicial construction in the Edwards Case, must be regarded as a legislative adoption of that construction. In addition, the question is not, as urged, the construction of an exemption

clause in a taxing statute, but whether a statute has imposed a tax upon a certain subject-matter. Hence, if doubt exists, the applicable rule is that stated in Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; United States v. Coulby (6 C. C. A.)· 258 F. 27, 169 C. C. A. 165,—viz. statutes levying taxes are construed most strongly against the government and in favor of the citizen, and a tax will not be held to have been imposed, unless such is the clear import of the language used.

Upon the basis of the cases above cited, it is now settled that the statutory provisions in question require a corporation issuing stock to pay these stamp taxes only upon an original issue of stock. Sales, gifts, and transfers of such stock subsequent to the original issue are included, if at all, within other provisions of the act; and by original issue is meant the issue first in point of time, whereby the corporation puts out stock certificates evidencing ownership by its shareholders of its capital. Later exchanges of stock certificates between a corporation and the holders of its outstanding certificates are reissues, and not original issues; and this is true, even though the exchange consists in converting outstanding common into preferred, or outstanding preferred into common, with different rights and privileges in the capital assets, including changes in the right to vote, in the payment of dividends, and in distribution of assets on final liquidation. In the Edwards Case this is precisely what was done, and resulted in a large increase both of new outstanding common and of first profit-sharing preferred.

The test is not whether the reissued stock is of a different kind from the original or outstanding issue. It is whether it is an original issue of certificates evidencing ownership in the corporate capital, or whether it is a reissue of shares·to the·holders of an original issue in substitution or exchange therefor. Counsel for the government acquiesce in the view stated by Judge Hickenlooper in the American Laundry Machine Co. Case, that the words "on reorganization" add nothing to the force and effect of the preceding language··defining an original issue. Hence this view is assumed as sound without further comment. The cases above cited also settle the proposition that the question is not affected by the number of shares which may be reissued in exchange for certificates of original issue.

Government counsel, however, earnestly contend that certificates of common·stock without nominal or par·value are not withheld in these decisions, nor controlled by the foregoing principles. It is said that no-par stock is a wholly new kind of stock, and should be regarded as the first or original issue by a corporation of that stock. It is also urged that, if this is not true, then a corporation may by indirection increase its outstanding capital stock or declare stock dividends without paying the stamp tax, and may also issue no-par stock in amounts which, if taxed as an original issue, would produce larger revenues than the stamp tax assessed on the original certificates for which it is substituted. These contentions call for brief comment.[1]

In the West Virginia Pulp & Paper Co. Case, the briefs of both counsel state that the taxes involved were, in part, at least, imposed upon no-par value stock issued by the corporation to the holders of its par value stock. It is said that the corporation had issued certificates having a par value of $100 a share, that later it authorized the reissue in exchange of four shares having a par value of $25 for each share having a par value of $100, and that later, and before this exchange had been fully effected, the corporation again authorized the reissue in exchange of four shares without nominal or par value·for each share having a par value of $100, or of one such share for each share having a par value of $25. That case, it appears, arose under the War Revenue Act of 1918, before was added the concluding clause to the first part of paragraph 2, schedule A (U. S. Comp. Stat. Supp. 1923, §. 6318p). In view of these facts the several opinions in that case must be regarded as disposing in substance of every contention now made by government counsel. If the issue of no-par stock had been assessed as an original issue at the rate fixed in the War Revenue Act of 1918, the stamp tax would have been four times that assessed and collected on the original issue for which it was substituted. The amendment in this respect of the War Revenue Act of 1921 evidently was made to favor the taxpayers, and not to

---

[1] The War Revenue Act of 1918, as to par value certificates of stock, imposes a stamp tax of 5 cents on each $100 face value or fraction thereof. It imposes as to each no-par value certificate a tax of 5 cents a share, but adds: "If the actual value of the no par share exceeds $100, then a tax of five cents on each $100 of actual value or fraction thereof." In the War Revenue Act of 1921 these provisions were re-enacted and for the first time were added these words: "or unless the actual value is less than $100 per share, in which case the tax shall be one cent on each $20 of actual value or fraction thereof."

change the definition of an original issue of capital stock. It results that the argument, much stressed by counsel, that an issue of common stock having no par value ought not to be regarded as a reissue, or as other than an original issue, if the government thereby is prevented from collecting a tax no greater than had been previously assessed and collected on the original issue, is found to be in conflict with the decision in that case.

I cannot acquiesce in the criticism made of the opinions therein of the District Court and Circuit Court of Appeals. It cannot be inferred that all considerations now urged were not fully examined and ruled adversely to the government's contention, because District Judge Knox or the Circuit Court of Appeals did not discuss them at length in their respective opinions. The ability and high standing of this group of judges, as well as the eminence and learning of the counsel therein of record, forbid any such inference. On the contrary, the brevity of their several opinions rather indicates the lack of merit in the contentions, or a belief that they were in no wise distinguishable in principle from the cases already decided. Moreover, the refusal of the Supreme Court to take jurisdiction by certiorari cannot be regarded as perfunctory. If error had been committed below, it is highly probable that a writ of certiorari would have issued, because of the public interest of the case, and the questions at issue, and the widespread effect thereof in the assessment and collection of government revenues. I am disposed to regard this refusal as an acquiescence in the disposition made of all questions necessarily arising upon the record.[2]

Counsel misapprehend, it seems to me, what actually takes place when an Ohio corporation reorganizes under the Ohio no-par value stock act. To be sure, my observations must be limited to that statute. It will be helpful if one ignores the fact that certifi-

cates have been issued and are called in and exchanged for another kind of certificate, and directs one's attention to the capital or capital assets of the corporation. A corporation's capital consists of the money or property contributed by its shareholders. These contributions are its capital, and are set up as such on its books. If earnings accrue, the corporation may have a surplus. Its assets then consist of its original capital and its accumulated surplus. Presumptively, the capital of an Ohio corporation, when it begins business, equals the par value of its outstanding certificates of preferred and common stock. It is forbidden by law to issue stock not fully paid up.

This relation of capital and surplus is not necessarily disturbed or changed by a reorganization under the no-par act. If the corporation, on reorganizing, does not include any part of its surplus as a part of the capital with which it is thereafter to do business, then no increase of capital stock is made, and no stock dividend is in substance declared. Upon the facts admitted in these cases, nothing of that nature took place. On the contrary, so far as appears, the capital of each corporation was left just as it was. The only thing done was to reissue to its former stockholders new certificates in exchange for the outstanding certificates originally issued to them, evidencing merely the same rights in the corporate property as they previously had. No new contribution to the corporate capital was exacted from the stockholders receiving the new certificates. No part of the corporate assets was set aside as capital and transferred to the shareholders in connection with the issue of the new certificates.

In this situation it is immaterial that the number of shares is increased. It is also immaterial that the stamp taxes would have been greater, had the corporation done originally that which it did in making this exchange of certificates. It was held in all the cases above cited that a mere increase in the number of shares does not make the reissue

[2] Since this opinion was drafted, I have been supplied with the record of the West Virginia Pulp & Paper Co. Case in the Circuit Court of Appeals, and petition and briefs on application for certiorari. Upon examination I find my appreciation of the facts and of the conflicting views of the law to have been accurate. The tax was assessed on the $25 par value shares at the rate of 5 cents on each $100 of face value or fraction thereof. In the second exchange to no-par value stock, a tax of 5 cents was assessed on each new certificate, or four times as great a sum as on the first exchange from $100 to $25 par value shares. In the second exchange, 28,840 no-par value shares were issued in place of 7,210 original

certificates having $100 par value. The questions whether the $25 par value or the no-par value certificates were an original or a reissue, whether the answer thereto depended on the nature or kind of the reissue shares, whether a less tax was collected on the shares originally issued than on the reissued no-par value shares, if the latter is to be treated as an original issue, were all clearly and forcibly presented; in fact, were the only questions of law discussed in the briefs. The government's present contentions in this respect could not have been overlooked, nor the case decided, without adopting the contrary view.

subject to the tax. It must have been held in the West Virginia Pulp & Paper Co. Case that the assumed loss to the government resulting from its inability to tax reissued common stock without nominal or par value is no justification for enlarging the definition of capital stock of original issue. If doubt exists on this point, it should be resolved against the government, on authority of Gould v. Gould, supra. If the corporation had received or exacted additional contributions to its capital on reissuing its no-par value shares, it might be that to this extent this would be an original issue. It might be that, if the corporation had carried to its capital account some part of its surplus, this would, to that extent, be a stock dividend and an original issue. No opinion need be expressed one way or the other. But, even so, no difficulty is perceived in ascertaining the fact before assessing the tax, nor in separating the original issue from the reissue.

Upon the facts presented, the several demurrers must be overruled.