Williams, Judge,
delivered the opinion of the court:
The plaintiff, on June 25, 1917, entered into two contracts with the Standard Shipbuilding Corporation of New York, under the terms of which the Shipbuilding Corporation agreed to build for the plaintiff two single-screw, ’tween deck, steel cargo steamships each of 7,300 deadweight tons at an agreed price of $175 per ton, making the cost or contract price of $1,277,500 for each ship, or $2,555,-000 for both ships, such price being payable in certain installments as set forth in the contracts.
The two contracts were identical other than that one vessel was to be completed on May 31, 1918, and the other on June 80, 1918.
On August 3,1917, the United States sent a telegram, and a letter confirming the telegram, to the Standard Shipbuilding Corporation requisitioning all power-driven vessels above 2,500 dead-weight tons under construction in the Standard Shipbuilding Corporation yards, and requiring the corporation to complete the construction of such vessels for the United States. Among the contracts thus requisitioned were the two contracts involved in this suit. The plaintiff was formally notified of the requisition of his contracts on August 16, 1917, prior to which time he had paid two installments on each of the contracts totaling $562,100. The vessels were each 3.5 percent completed on August 3, 1917, and the Standard Shipbuilding Corporation was able and willing to complete them, and the plaintiff was able and ready to pay for the same.
The two vessels were completed by the Standard Shipbuilding Corporation and delivered to the United States on April 3, 1919, and May 5, 1919, respectively, the total cost *243 of construction being $3,127,889.82, or $572,889.82 more than the contract price of $2,555,000.
Subsequent to the taking over of the contracts by the United States the plaintiff filed with the United States Shipping Board Emergency Fleet Corporation a claim for just compensation on account of the requisitioning of his property. After prolonged negotiations an agreement was reached between the parties for a settlement of the claim by payment to the plaintiff of $602,100. This amount represented the sum of $562,100 paid by plaintiff to the Shipbuilding Company, on account, for the construction of the vessels, and $40,000 on account of the expenses incurred otherwise by plaintiff in connection with the undertaking. The amount of $602,100 was paid to plaintiff on June 11, 1919, and was accepted by him in full settlement of his claim growing out of the taking of the two contracts.
The plaintiff, in July 1929, instituted suit in this court seeking to set aside the settlement and release of his claim against the United States for compensation for the taking of the vessels on the grounds that the agreement of settlement and release of the claim by him was executed by coercion and under duress and that the release was consequently null and void; the plaintiff prayed for such relief as he was entitled to under the facts stated, and that he be awarded judgment against the United States for the sum of $1,074,950, with interest from August 3, 1917. The court, upon consideration of the case, dismissed the plaintiff’s petition (69 C. Cls. 262), and certiorari was denied by the Supreme Court (282 U. S. 862).
Thereafter, the plaintiff petitioned Congress for relief, with the result that on June 26, 1934, an act of Congress was approved conferring on the Court of Claims jurisdiction to hear and determine the plaintiff’s claim. The act provided:
That the Court of Claims of the United States be, and it is hereby, given jurisdiction to hear and determine the claim of Carlo de Luca, and to award him just compensation for losses and damages, if any, which he may have suffered through action of the United States Shipping Board Emergency Fleet Corporation in commandeering or requisitioning two certain contracts *244 dated June 25, 1917, which the said Carlo de Luca owned and which he had with the Standard Shipbuilding Corporation of New York for the construction and delivery of two certain ships designated as “hulls 12 and 13”; and to enter decree or judgment against the United States for such just compensation, if any, notwithstanding the bars or defenses of any alleged settlement or adjustment heretofore made or of res judi-cata, lapse of time, laches, or any statute of limitation: Provided, however, That the United States shall be given credit for any sum heretofore paid the said Carlo de Luca by reason of said action of the United States Shipping Board and/or the United States Shipping Board Emergency Fleet Corporation.
Sec. 2. Such claim may, under section 1 of this Act, be instituted at any time within four months from the approval of this Act. Proceedings in any suit brought in the Court of Claims under this Act, appeals therefrom, and payment of any judgment therein shall be had as in the case of claims over which such court has jurisdiction under section 145 of the Judicial Code, as amended.
The plaintiff within the time required by the jurisdictional act instituted the instant suit seeking to recover just compensation for the taking of the two contracts involved. The jurisdictional act not only waives the bar of the statute of limitations as a defense against the claim but also waives the settlement and adjustment of the claim by which plaintiff was paid $602,100 on June 11, 1919, and the defense of res judicata in respect to the previous action on the claim in this court and the Supreme Court. The plaintiff therefore stands before the bar of the court in exactly the position he would be had he not made the settlement and instituted timely suit under the general jurisdiction of the court for just compensation for the taking of his contracts, as numerous other plaintiffs similarly situated have done, to whom the court has awarded just compensation. The only limitation on the award he is entitled to receive under the jurisdictional act is that payments heretofore received by him shall be credited against the same.
[The question as to what constitutes just compensation for private property taken for public use and the method by which it shall be computed has been considered by the *245 courts in many cases and the rule to be followed is quite well established. It has been held that just compensation is “the sum that in all probability would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy.” Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146; Brooks-Scanlon Corp. v. United States, 265 U. S. 106. It is the “full money equivalent of the property taken.” United States v. New River Collieries Co., 262 U. S. 341. In other words just compensation is the value of the property taken at the time of the taking when compensation is paid contemporaneous with thet taking. Monongahela Navigation Co. v. United States, 148 U. S. 312; Vogelstein & Co. v. United States, 262 U. S. 337; United States v. New River Collieries Co., supra, and Brooks-Scanlon Corp. v. United States, supra. Where the taking precedes the payment of compensation the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of the value paid contemporaneously, and interest at a proper rate is held to be a| good measure of the amount to be added. Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299; United States v. Benedict, 261 U. S. 294; Brown v. United States, 263 U. S. 78, and Brooks-Scanlon Corp. v. United States, supra. Where the article or thing taken has an established market value at the time of the taking, the prices current in such market will be regarded, as the fair market value of the article or thing taken and likewise the measure of just compensation for its taking. United States v. New River Collieries Co., 276 Fed. 690 (affirmed 262 U. S, 341); Standard Oil Co. v. Southern Pacific Co., supra; Boom Co. v. Patterson, 98 U. S. 403; Vogelstein v. United States, supra; Hudson Navigation Co. v. United States, 57 C. Cls. 411; Gulf Refining Co. v. United States, 58 C. Cls. 559.
The findings disclose that during 1916 and 1917 many contracts were made with American shipyards for the construction of ships for citizens of the United States and citizens of other countries, and that beginning in 1916 and continuing until August 3, 1917, when plaintiff’s contracts were requisitioned, and thereafter, such contracts were subject to free and ready sale and were frequently transferred *246 from the original owners to assignees and by the first and later assignees to subsequent assignees; that there was an active demand for such contracts, and that the market value of these contracts continually rose during this period. The plaintiff,-therefore, had he desired to sell the contracts in question could easily have done so on the date of their requisition, August 3, 1917, there then being a ready and active market for them. The plaintiff has submitted in evidence a record of numerous sales of such contracts for the months immediately preceding and following the date on which his contracts were requistioned. On the basis of the prevailing prices at which these contracts were bought and sold, the fair market value of the plaintiff’s two contracts, on August 3, 1917, is conclusively shown to have been not less than $260 per ton. In addition to this record of actual sales, the plaintiff has established by expert witnesses of the highest character and standing that $260 per ■ton was the market value of the contracts at the date on which they were requisitioned. There can be no question •that the plaintiff could have disposed of his two contracts on August 3,1917, at $260 per ton, and he is clearly entitled to' an award of compensation on the basis of that valuation. We have therefore found (Finding No. 22) that just compensation to plaintiff, that is the sum that would put him in as good position pecuniarily as if his property had not been taken by the defendant, was as of August 3, 1917, the date of the taking, the sum of $1,241,000.00.
Under the law of the case the plaintiff, upon the facts shown, is entitled to recover the sum of $1,592,464.46, computed as follows:
Just compensation due plaintiff as of August 3, 1917_ $1, 241, 000. 00
Interest thereon at 6% per annum from Aug. 3, 1917, to June 11, 1919_,._ 138,164.64
1,379,164. 64
Less amount paid June 11, 1919- 602,100.00
Balance- 777,064. 64
Interest on balance at 6% per annum'from June 11, .1919, to date (December 7, 1936)- 815,399.82
Total amount due plaintiff to date- 1, 592,464. 46
*247 Judgment is accordingly awarded plaintiff in the sum of $1,592,464.46, together with interest on $777,064.64 thereof from December 7, 1936, until paid. It is so ordered.
Whaley, Judge; Littleton, Judge; Gkeen, Judge; and Booth, Chief Justice, concur.