W. T. GRANT CO. v. DUGGAN.

No. 151.

Circuit Court of Appeals, Second Circuit.

Feb. 14, 1938.

Wollman & Wollman, of New York City (Edward S. Seidman and Achilles H. Kohn, both of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff is a Delaware corporation which had outstanding 538,900 shares of no-par value stock in October, 1929. During that month it issued a like number of new shares to its stockholders, share for share. To comply with the requirements of Delaware law $1 for each share of the new issue was transferred from surplus account to capital account on the books of the corporation on October 25, 1929, the date on which certificates for the new shares were issued. On that date stock of the company sold on the New York Stock Exchange at $56 per share, but the complaint alleges that the actual value of the stock was only $20.76 per share, based on the value of the company's net tangible assets and good will. The plaintiff voluntarily paid a stamp tax of $269.45 (apparently taking the value of the new issue as $1 per share) and the Commissioner assessed an additional stamp tax of $14,824.58, based on a valuation of $56 per share. The additional assessment having been paid under protest and a claim for refund having been denied, this action was instituted. On motion of the defendant, Judge Patterson dismissed the complaint for failure to state a cause of action. From the resulting judgment the plaintiff has taken this appeal. Two questions are presented: Whether the additional stock was an "original issue" subject to stamp tax; and, if it was, whether its "actual value" may be measured by market quotations in October, 1929, just prior to the great slump.

Section 800, title 8, of the Revenue Act of 1926, 44 Stat. 99, 101, lays a stamp tax upon certificates of stock and other documents mentioned in Schedule A, of which the second subdivision reads as follows:

"2. *Capital stock, issue:* On each original issue, whether on organization or reorganization, of certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, on each $100 of face value or fraction thereof, 5 cents: Provided, That where a certificate is issued without face value, the tax shall be 5 cents per share, unless the actual value is in excess of $100 per share, in which case the tax shall be 5 cents on each $100 of actual value or fraction thereof, or unless the actual value is less than $100 per share, in which case the tax shall be 1 cent on each $20 of actual value, or fraction thereof."

Substantially similar language appears in prior revenue acts back to War Revenue Act of 1917, 40 Stat. 322. Since 1919 the

Treasury Regulations have provided that an issue of a stock dividend is subject to the tax, T.R. 40, art. 4(f); T.R. 71, art. 28(f); and, in the case of stock without par value, that the actual value is to be determined by the market price of each share, T.R. 40, art. 3(d); T.R. 71, art. 27(d).

In the case of an issue of stock which amounts merely to a "split-up," as where a corporation, without changing its capital, issues five $20 shares in place of each $100 share, the courts have consistently held that the substituted shares are not taxable as an "original issue." American Laundry Machinery Co. v. Dean, 292 F. 620, D.C. S.D.Ohio; Trumbull Steel Co. v. Routzahn, 292 F. 1009, D.C.N.D.Ohio; Bowers v. West Va. Pulp & Paper Co., 2 Cir., 297 F. 225; Standard Mfg. Co. v. Heiner, 300 F. 252, D.C.W.D.Pa.; Cuba R. Co. v. United States, 60 Ct.Cl. 272. So, too, where one kind of stock was exchanged for another. Edwards v. Wabash Ry. Co., 2 Cir., 264 F. 610; In re Grant-Lees Gear Co., 1 F.2d 393, D.C.N.D. Ohio; Cleveland Provision Co. v. Weiss, 4 F.2d 408, D.C.N.D.Ohio. The appellant contends that in the present case the additional issue merely doubled the number of shares outstanding, and should be treated like a "split-up." But here the issue did effect a change in the capitalization of the company; the capital was increased by the sum of $538,900 and the surplus correspondingly decreased. The rights of shareholders were altered accordingly. It was a stock dividend. See United States v. Siegel, 8 Cir., 52 F.2d 63, 65. The Treasury Regulations have long classified a stock dividend as an "original issue." This accords, we believe, with common usage, for most people would regard shares issued as a dividend as a new issue, and not the same as a "split-up." So far as we are informed, no court has ruled upon the taxability of a stock dividend issue, although dicta in favor of it can be found. See American Laundry Machinery Co. v. Dean, 292 F. 620, 622, D.C.S.D.Ohio; Cleveland Provision Co. v. Weiss, 4 F. 2d 408, 412, D.C.N.D.Ohio. The validity of the regulation appears too clear for dispute; and subsequent re-enactment of the stamp tax provisions indicates that Congress was content with the departmental interpretation. United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 95, 56 S.Ct. 353, 356, 80 L.Ed. 500.

There remains the question of the amount of the tax. The appellant argues that, if a stock dividend issue is taxable at all, the tax must be measured by the sum set aside for the stock dividend; namely, the $538,900 converted from surplus to capital. But the statute does not provide any such basis for the amount of the tax. It lays a tax upon the actual value thereof. See Commercial Credit Co. v. Tait, 2 F.2d 862, D.C.Md.

As already stated, the Commissioner measured the actual value by the market value as evidenced by sales on the New York Stock Exchange on the date the certificates were issued, October 25, 1929. In so doing he acted in conformity with the regulation then in effect. T.R. 71, art. 27(d). The appellant contends that this regulation is void. It was so held in Intercoast Trading Co. v. McLaughlin, 18 F.Supp. 149, D.C.N.D.Cal. But we cannot agree that, where a fair and ready market exists, the market price does not establish the value of the article. "Actual" adds nothing. Cummings v. Merchants' National Bank, 101 U.S. 153, 162, 25 L.Ed. 903; Sanford v. Peck, 63 Conn. 486, 27 A. 1057, 1058. The value or "actual value" of the plaintiff's stock was what a seller could readily get for it in cash from willing purchasers. The complaint disclosed that trades upon the Exchange ran into thousands of shares each week during several months before and after October 25th. The allegation of facts establishing the existence of a fair and ready market and the market price of the plaintiff's stock on the critical date left no issue to be tried, despite the further allegations that prices on the Exchange were greatly inflated during the boom market of 1929 and were in excess of the actual value of the stocks dealt in thereon. Nor is it material that shortly after October 25th the market crashed. As Judge Patterson well said in his opinion: "The actual value of property is what a purchaser in fair and free market conditions would have given for it in fact, not what a court at a later time may think a purchaser would have been wise to give." See New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143; Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647; United States v. New River Collieries Co., 3 Cir., 276 F. 690, 693, affirmed, 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; compare Rogers v. Strong, 3 Cir., 72 F.2d 455, 457.

In our opinion, the regulation did not conflict with the statute but established a valid "measuring rod" of value—at least as applied to the facts of this case.

Judgment affirmed.