## CITY OF NEW YORK *v.* SAGE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 34. Argued October 27, 1915.—Decided November 8, 1915.

On condemnation proceedings adaptability to the purposes for which the land could be used most profitably can be considered only so far as the public would have considered it had the land been offered for sale in the absence of the exercise of eminent domain.

The owner is entitled to the value of the property taken; that is, what it fairly may be believed a purchaser in fair market conditions would have given for it and not what a tribunal at a later date may think a purchaser would have been wise to give.

The owner is not entitled to added value resulting from the union of his lot with other lots when the union was the result of the exercise of eminent domain and would not otherwise have been practicable.

The owner is entitled to rise in value before the taking not caused by the expectation of that event.

In this case, involving condemnation of property in New York, *held* that although maps showing the parcels to be taken had been filed and notices posted on the property, one not a resident of New York, purchasing before the petition was filed could properly remove the case into the Federal court as the proceeding was not commenced until after the petition for appointment of commissioners had been filed.

206 Fed. Rep. 369, reversed.

THE facts, which involve the validity of an award by commissioners for land taken for the Ashokan reservoir in New York, are stated in the opinion.

*Mr. Louis C. White* and *Mr. W. McM. Speer* with whom *Mr. Frank L. Polk* was on the brief, for petitioner:

The Circuit Court of Appeals erred in holding this case within *Boom Co. v. Patterson,* 98 U. S. 403.

There is absolutely no evidence that the market value of the property taken had been increased by reason of availability and adaptability for reservoir purposes.

The state court having held that there can be no recovery for reservoir availability and adaptability of parcels taken by the City of New York for the Ashokan reservoir considered in connection with other parcels, the Federal court will accept those decisions as the law of the State of New York and as binding on it.

The Circuit Court of Appeals erred in holding that this was a controversy between citizens of different States removable from the State to the United States court.

The judgment of the United States Circuit Court of Appeals should be reversed and the additional award for availability and adaptability for reservoir purposes disallowed.

In support of these contentions see *Backus v. Fourth Street Depot,* 169 U. S. 557; *Boom Co. v. Patterson,* 98 U. S. 403; *Chamber of Commerce v. Boston,* 217 U. S. 189; 195 Massachusetts, 338; *Burgess v. Seligman,* 107 U. S. 20; *King v. New York,* 36 N. Y. 182; *Marchant v. Penna. R. R.,* 153 U. S. 380; *Matter of Grade Crossing,* 17 App. Div. 54; *Matter of Peterson,* 94 App. Div. 143; *Matter of Water Supply,* 211 N. Y. 174; *Matter of Simmons,* 58 Misc. (N. Y.) 581; 130 App. Div. 350; 195 N. Y. 573; *McGovern v. New York,* 229 U. S. 363; *Minnesota Rate Cases,* 230 U. S. 352; *Shoemaker v. United States,* 147 U. S. 282; *United States v. Chandler-Dunbar Co.,* 229 U. S. 53.

*Mr. Edward A. Alexander* for respondent:

It was not error to refuse to remand this proceeding to the state court.

The courts had no power to modify the award, without nullifying the state constitution.

The findings of the Commissioners of Appraisal were findings of fact, which an appellate court has not jurisdiction to review.

The Commissioners of Appraisal followed the decisions of the state court.

The adaptability of land for reservoir or water supply purposes has been uniformly taken into consideration, as an element, in estimating its value in a number of well-decided and carefully considered cases, both in the United States and Great Britain.

The lower courts were right in holding this case within the principle of *Boom Co.* v. *Patterson*, 98 U. S. 403.

Although there were prior demands, such are unnecessary to be proved, to entitle the owner to the element of value, due to the adaptability and availability of his property, as part of a natural reservoir site, and such value is not in any sense speculative. *Chandler-Dunbar Co.* v. *United States*, 229 U. S. 53; *Boston Chamber of Commerce* v. *Boston*, 217 U. S. 189; *McGovern* v. *City of New York*, 229 U. S. 363, and the *Minnesota Rate Cases*, 230 U. S. 352, do not apply to the facts in the case at bar.

The fact that the defendant in error did not, or could not, alone, use his property as a reservoir site, does not deprive the property of its value, as a portion of a reservoir site.

The fact that the defendant in error was the owner of only a part of a reservoir site, does not prevent that element of value being considered.

The valuation made by the Commissioners of Appraisal, was not the value of the property to the condemning

party, but the market value of the property in the open market, between a willing seller and a willing buyer.

If there is any conflict between the decisions of the state and Federal courts, the Federal courts are not bound, by state court decisions, on questions of general law, such as the valuation of real estate.

The entire record shows that the demand for this property for reservoir purposes, increased its market value.

Numerous authorities of the state and Federal courts support these contentions.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding for the taking of land for the Ashokan reservoir, similar to the one before us in *McGovern* v. *New York*, 229 U. S. 363. After Commissioners were appointed to ascertain the compensation to be paid the case was removed to the Circuit Court, diverse citizenship being alleged. There was a motion to remand which was overruled and subsequently the Commissioners reported that "the sum of $7,624.45 for land and buildings and the further sum of $4,324.45 for reservoir availability and adaptability being a grand total of the sum of $11,948.90 is the sum ascertained and determined by us . . . to be paid to the owners of and all persons interested in said land for the taking of the fee thereof, designated . . . as Parcel 733." They also recommended the allowance of five per cent. on the above award for legal fees and expenses, and of $1,372.31 to named witnesses in specified sums. The report was confirmed by the Circuit Judge, 190 Fed. Rep. 413, and afterwards by the Circuit Court of Appeals. 206 Fed. Rep. 369. 124 C. C. A. 251.

Upon an inspection of the record it appears to us, as the language of the Commissioners on its face suggests, that their report does not mean that the claimant's land had a

market value of $11,948.90—that it would have brought that sum at a fair sale—but that they considered the value of the reservoir as a whole and allowed what they thought a fair proportion of the increase, over and above the market value of the lot, to the owner of the land, subject to the opinion of the court upon the point of law thus raised. Upon that point we are of opinion that they were wrong.

The decisions appear to us to have made the principles plain. No doubt when this class of questions first arose it was said in a general way that adaptability to the purposes for which the land could be used most profitably was to be considered; and that is true. But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the City's exercise of the power of eminent domain. The fact that the most profitable use could be made only in connection with other land is not conclusive against its being taken into account, if the union of properties necessary is so practicable that the possibility would affect the market price. But what the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact—not what a tribunal at a later date may think a purchaser would have been wise to give, nor a proportion of the advance due to its union with other lots. The City is not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain. Any rise in value before the taking, not caused by the expectation of that event, is to be allowed, but we repeat, it must be a rise in what a purchaser might be expected to give.

It is said that in this case there was testimony that the lot was worth more than the total allowed. But the only

explanation of the separation of items by the Commissioners is that they were not prepared to say that the market value of the lot was $11,948.90, seeing that the claimant bought it a few days before for $4,500, but that they thought the additional value gained by the City's act should be taken into account and shared between the City and the owner of the land—a proposition to which we cannot assent. *Minnesota Rate Cases*, 230 U. S. 352, 451. *McGovern* v. *New York*, 229 U. S. 363, 372.

The motion to remand was made on the ground that Sage bought after the condemnation proceedings were commenced and therefore was not entitled to remove the suit to the Circuit Court. The maps showing the parcels of real estate to be taken had been filed and notices had been posted on the property before the conveyance to Sage, but the petition for the appointment of Commissioners was not filed until after it had been made. We see no reason to differ from the opinion of the Judges below that the proceeding was not commenced at the date when Sage took.

*Decree reversed.*