## W. T. GRANT CO. v. DUGGAN.

District Court, S. D. New York.
Feb. 25, 1937.

Wollman & Wollman, of New York City (Edward S. Seidman and Achilles H. Kohn, both of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (George B. Schoonmaker, Asst.

U. S. Atty., of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The questions presented by the defendant's motion to dismiss the amended complaint are whether an issue of stock put out by the plaintiff was subject to stamp tax under the Revenue Act of 1926, and if so whether the amount of tax collected was excessive. The suit is one to recover the tax paid under protest.

The facts pleaded in the amended complaint and taken to be true for purposes of the present motion are these: The plaintiff, a Delaware corporation, had an authorized capital of 550,000 shares without par value prior to October 7, 1929, and of these authorized shares 538,900 shares had been issued. On October 7, 1929, the number of authorized shares was increased by appropriate corporate action to 2,000,000 without par value. On the same day it was voted by the board of directors that 538,900 new shares be issued and sent to the stockholders, share for share, and that $538,900 be transferred from corporate surplus to capital. Certificates representing 538,900 new shares were accordingly issued on October 25, 1929, and $538,900 was transferred from surplus to capital.

Relative to the value of the new shares, it is pleaded that the actual value of the new stock on October 25, 1929, was $20.76 a share, based on the value of net tangible assets and good will of the corporation. The plaintiff concedes that the price at which the stock sold on the New York Stock Exchange on that day was $56 a share, and that trading in the stock was active for months before and after the appearance of the new shares; but it is averred that there was a great speculative boom on the Stock Exchange at the time, resulting in prices unreasonably high and not warranted by assets, earnings, or prospects, that the prices for stocks generally, including the stock in question, were not quotations of actual value, but were quotations of inflated prices bid and paid, that consequently the actual value of the new shares issued by the plaintiff was not reflected by the market quotations.

The amended complaint further shows that the plaintiff voluntarily paid a stamp tax of $269.45 on the new shares (evidently on the theory that the value of the shares for purpose of stamp tax was $1 a share, the amount of money per share transferred from surplus to capital) ; that the Commissioner of Internal Revenue assessed an additional stamp tax of $14,824.-58, based on a value of $56 a share, that having been the current price of the stock on the Stock Exchange; that the plaintiff paid the additional assessment under protest and filed claim for refund which was denied.

The suit is to recover the $14,824.58. The plaintiff's position is, first, that the additional stock issue was not subject to stamp tax to any extent, and, second, that if it was so subject, the amount of tax assessed and paid was in excess of the proper amount. The defendant presses the contrary of both propositions.

The tax was assessed under Revenue Act of 1926, § 800, 44 Stat. 99 (see 26 U.S. C.A. § 900 and note) to the effect that "There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule."

"Schedule A.—*Stamp Taxes.* * * *

"2. Capital stock, issue: On each original issue, whether on organization or reorganization, of certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, on each $100 of face value or fraction thereof, 5 cents: Provided, That where a certificate is without face value, the tax shall be 5 cents per share, unless the actual value is in excess of $100 per share, in which case the tax shall be 5 cents on each $100 of actual value or fraction thereof, or unless the actual value is less than $100 per share, in which case the tax shall be 1 cent on each $20 of actual value, or fraction thereof." 44 Stat. 101.

The substance of the statute, so far as the present case is concerned, is that there shall be a stamp tax "on each original issue" of certificates of stock, and that the amount of the tax in the case of stock without par value shall be measured by the "actual value" of the shares. The

language used in the 1926 act is essentially the same as in prior acts going back at least as far as the 1917 act (40 Stat. 300, 319).

■ 1. The issue of certificates for 538,-900 additional shares in October, 1929, was an "original issue" of certificates within the intendment of the taxing statute and therefore subject to stamp tax. Those shares were issued by way of stock dividend, for there was a coincident transfer of $538,900 for surplus to capital which served as consideration for the issue—a sure mark of a stock dividend. Shares issued as stock dividend are clearly an "original issue" of shares within the meaning of the stamp tax statute.

The precedents relied on by the plaintiff do not help it. In Edwards v. Wabash Ry. Co., 264 F. 610 (C.C.A.2), it was held that the issue of one kind of stock in exchange for two other kinds called in was not an original issue and not subject to tax under the 1917 act. The case was one of first impression in the courts, and the court leaned on the fact that the Treasury Department in administering prior taxing acts almost identical in terms had consistently ruled that stock issued in exchange for stock of another class was not taxable, and that Congress in re-enacting the act without substantial change must have intended to adopt the construction placed on it by the Treasury Department. The Wabash Case has been followed in other cases presenting the same sort of exchange and also in cases involving the split-up of old shares into new shares of greater number but with the same aggregate par value. American Laundry Co. v. Dean, 292 F. 620 (D.C.Ohio); Trumbull Steel Co. v. Routzahn, 292 F. 1009 (D.C.Ohio); Bowers v. West Virginia Pulp & Paper Co., 297 F. 225 (C.C.A.2); Standard Mfg. Co. v. Heiner, 300 F. 252 (D.C.Pa.); In re Grant-Lees Gear Co., 1 F.(2d) 393 (D.C. Ohio); Cleveland Provision Co. v. Weiss, 4 F.(2d) 408 (D.C.Ohio). It may then be taken as settled that the issuance of new stock in exchange for old stock of another class outstanding is not subject to stamp tax. But the present case is not of that type. No old stock was called in. There was no exchange. The new shares were an additional issue by stock dividend.

■ The regulations of the Treasury Department from 1919 on have all along provided that the issue of stock dividend is an "original issue" and subject to tax.

Regulations 40, part 1, art. 4 (1919, 1922, 1924); Regulations 71, art. 28 (1926, 1932). The repeated re-enactment of the taxing statute without substantial change is persuasive proof that Congress intended to re-enact it as interpreted by the executive department charged with its enforcement. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 97 A.L.R. 207; United States v. Safety Car Heating Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500. So the factor that proved decisive against imposition of tax in the Wabash Case, supra, operates here in favor of imposition of tax. The plaintiff itself was originally of the opinion that the issue of these shares was taxable, for it paid a small sum for stamps without compulsion.

■ 2. The Commissioner was correct in taking the market value of the new shares at time of issue as the measure of the tax. The shares were listed on the New York Stock Exchange and were being actively traded in at the time. The market was a free and fair one. Under such conditions the "actual value" mentioned in the statute was the price that a seller under no particular pressure could readily obtain for the shares on the market, in other words, the market value. See Cummings v. Merchants' National Bank, 101 U.S. 153, 25 L.Ed. 903.

I cannot follow the argument that the market value must be disregarded because of the presence of the stock market boom. Hindsight tells us that prices of stocks were far too high at that time because of speculation. But the market value was the real value, fully as real as if the prophecies of the future then current had turned out to be true. Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647. The actual value of property is what a purchaser in fair and free market conditions would have given for it in fact, not what a court at a later time may think a purchaser would have been wise to give. City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143. To ignore the proofs given by a free and active market and to concoct a synthetic value based on assets and earnings or on the opinions of experts would be to shut our eyes to reality.

The plaintiff has a case, Rogers v. Strong, 72 F.(2d) 455 (C.C.A.3), to the effect that the "fair market value" of a stock, for purposes of income tax and.

within the meaning of section 111(c) of the Revenue Act of 1928 (26 U.S.C.A. § 111 and note) was not conclusively established by the price of the stock on the Stock Exchange in July, 1929, although the stock was then the subject of active trading. The court held that the stock was acquired at "the peak of the stock inflation" and that the stock market price was therefore not the "fair" market price. I am of opinion that the decision in the Rogers Case is out of line with controlling principles laid down by the Supreme Court and cannot follow it.

The defendant's motion was to strike out the allegations in the amended complaint to the effect that the sales on the Stock Exchange did not represent the actual value, and then to dismiss the balance of the amended complaint. Why the motion was not simply one to dismiss I do not know. The amended complaint fails to state a cause of action, and the motion to dismiss on that ground will be granted.