## UNITED STATES v. 2,877.37 ACRES OF LAND IN HARRIS COUNTY, TEX., et al. (Tracts 46, 48, 49, 55).

Civil Action No. 687.

District Court, S. D. Texas, Houston Division.

Nov. 18, 1943.

See, also, 50 F.Supp. 544, 545.

Douglas W. McGregor, U. S. Atty., and H. L. Lewis, Sp. Asst. to U. S. Atty., both of Houston, Tex., for plaintiff.

Sewall Myer, Lewis Fogle, J. S. Bracewell, and Byron G. McCollough, all of Houston, Tex., for defendants.

KENNERLY, District Judge.

This is a suit by the Government of the United States of America to take for the public use approximately 2,877.37 acres of land located in Harris County west of the City of Houston, in this District and Division,[1] and a hearing on a motion by the Government to set aside the verdict of a jury finding the value of Tracts 46, 48, 49 and 55, aggregating 1,041.1 acres (without the minerals therein), and finding damages to tracts of the owners not taken, aggregating 384.7 acres, and to set aside the judgment entered on the Verdict, and for a New Trial.

The suit was filed under Section 257 et seq., Title 40 U.S.C.A.; Section 171, Title 50 U.S.C.A.; Section 591 et seq., Title 33 U.S.C.A.; and Section 632, Title 50 U.S.C.A.Appendix. Section 258, Title 40 U.S.C.A.,[2] provides that the practice, pleadings, forms, and modes of proceedings in suits of this character shall conform as near as may be to that of the Courts of record in similar cases in the State where the Court is held. The Texas procedure is set forth in Title 52, Vernon's Civil Statutes of Texas.[3]

In accordance with the Texas Statute, Commissioners were appointed, held hearings, and made their report, finding the compensation which they say should be allowed the landowners. The Government being dissatisfied with the decision of the Commissioners has excepted thereto,[4] and the case has been tried here de novo (Olson v. United States, 292 U.S. 246, 250, 54 S.Ct. 704, 78 L.Ed. 1236), and as a civil action under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c (United States v. 16,572 acres of land, D.C., 49 F.Supp. 556.)[5]

Under both the Texas Statutes[6] and the Federal Statutes,[7] the issue of the value of the tracts taken, and of the benefits and damages to the tracts of the owners not taken, was submitted to the jury.

[1] The land was taken in connection with the building of a system of dams or levees to impound the flood waters of Buffalo Bayou and other streams to protect the Houston Ship Channel, other Government projects, and the City of Houston, Texas.

[2] Section 258, Title 40 U.S.C.A., is as follows:—

"§ 258. Same; procedure

"The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding."

[3] Articles 3264 to 3271 of such Statutes.

[4] Section 6 of Article 3266 of the Texas Statutes, relating to exceptions, reads as follows: "If either party be dissatisfied with the decision, such party may within ten days after the same has been filed with the county judge file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined as in other civil causes in the county court."

[5] It was there held that if the Federal Rules of Civil Procedure be not applicable, the Court could adopt them under Rule 83.

[6] Sections 2 and 3 of Article 3265 of the Texas Statutes are as follows:

"2. When the whole of a tract or parcel of a person's real estate is condemned, the damages to which he shall be entitled shall be the market value of the property in the market where it is located at the time of the hearing.

"3. When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and shall assess the damages accordingly."

[7] Section 595, Title 33 U.S.C.A., is as follows: "Consideration of benefits in assessing compensation. In all cases where private property shall be taken by the United States for the public use in connection with any improvement of rivers, harbors, canals, or waterways of the United States, and in all condemnation proceedings by the United States to acquire lands or easements for such improvements, where a part only of any such parcel, lot, or tract of land shall be taken, the jury or other tribunal awarding the just compensation or assessing the damages to the owner, whether for the value of the part taken or for any injury to the part not taken, shall take into consideration by way of reducing the amount of compensation or damages any special and direct benefits to the remainder arising from the improvement, and shall render their award or verdict accordingly."

The Government complains of the verdict of the jury as excessive, of certain evidence admitted and excluded at the trial, and of the Court's charge to the jury.

1. Rule 61 respecting motions for new trials is as follows: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

The Government's 14th and 15th grounds for New Trial, etc. are as follows:

"14. Because the verdict of the jury is not sustained by the evidence as to any of the above listed tracts of land.

"15. Because the verdict of the jury is not supported by the preponderance of the credible testimony introduced in said cause, and is against the weight of the evidence."

It will thus be observed that there is complaint of the findings of value by the jury and of the amount of compensation awarded to the landowners, which brings forward the question of whether substantial justice has been done.

There was evidence that the land is situated in Harris County, approximately 20 miles west from the center or business district of the City of Houston, and approximately 12 miles from the city limits, between U.S. Highway 90 (a paved highway which runs east and west through Houston and across Texas) and Westheimer Road, a hard surfaced county road or highway which runs westwardly from Houston for approximately twenty-five miles, and that there are available to the land electric lights, rural mail delivery, schools, churches, and paved, hard surfaced, graded, and country roads, etc. There was evidence that there has been, and was at the time of trial, a rapid trend of residence development of Houston, particularly for country estates and homes, in the direction of and in some cases reaching the vicinity of the land, and that such land is valuable for residence subdivision purposes as well as for farm and dairy purposes.

There was also evidence that the Miles land, before Tract 49 containing 490.1 acres was taken therefrom, had thereon all necessary houses and other improvements for, and there was thereon, one of the largest and best equipped dairies in South Texas, keeping thereon a very large number of milk cows, which were milked in barns, etc., on, grazed on and fed from food raised on the land. The Brandenberger land also had improvements for a dairy and a dairy thereon before Tract 55 was taken therefrom.

A large number of witnesses testified as to the reasonable market value at the time of taking (January 10, 1942) of the tracts and improvements thereon taken and the damages to the tracts and improvements thereon that remained. The values given in this testimony range from quite below to quite above the values found by the jury. In other words, the values found by the jury are well in between the highest values and the lowest values named by the witnesses.

The jury found the value of Tract 46 of 99.2 acres with improvements thereon (without the minerals) to be $5,952, or approximately $60 per acre, and the damage to the tract of 213.5 acres with improvements that remained to be $1,067.50. It found the value of Tract 48 of 259.5 acres and improvements thereon (without the minerals) to be $18,165, or approximately $70 per acre. There was no tract remaining. It found the value of Tract 49 of 490.1 acres with improvements thereon (without the minerals) to be $61,262.50, or approximately $125 per acre, and the damage to the tract of 106.2 acres and improvements that remained to be $26,637.50. It found the value of Tract 55 of 192.3 acres with improvements thereon (without the minerals) to be $19,230, or approximately $100 per acre, and the damage to the tract of 65 acres with improvements that remained to be $650.[8]

---

[8] The Report of the Commissioners was not offered in evidence at the trial nor made known to the Jury. The Commissioners found Tract 46 containing 99.2 acres to be of the value of $3,720, or approximately $37 per acre. They found Tract 48 containing 259.5 acres to be of the value of $8,434, or approximately $32 per acre. They found Tract 49 containing 490.1 acres to be of the value of $41,731,

It will be observed that the acreage value of the land and improvements of the different tracts found by the jury is in substantial harmony, but that as to Tracts 49 and 55, the values found were larger because of more valuable improvements.

■ The Jury was cautioned to scan carefully all the testimony as to value,[9] and taking into consideration all the evidence, I have reached the conclusion that the values fixed by the jury are not such as to be inconsistent with substantial justice.

2. In considering the complaints of the Government with respect to the admission of evidence and the charge to the jury, it should perhaps be said that in view of the fact that Section 258, Title 40 U.S.C.A., directs that in a suit of this kind the Court shall follow the procedure, etc., with respect to eminent domain in the State in which the Court is held, and of the fact that the procedure is, generally speaking, different in the several States, and of the fact that there are several different Federal Statutes making provision for the taking of property for public use for different purposes, there is some diversity and conflict of opinion in the Federal cases on eminent domain. There is likewise some conflict in the Texas cases on eminent domain.

3. There is one complaint by the Government as to the exclusion of evidence offered by the Government. It is as follows: "The Court erred in not allowing witnesses offered by the Government to testify as to sales of similar and/or comparable land in the vicinity wherein the tracts on trial are located, such testimony having been excluded on the theory that said witnesses were neither the buyer, seller or agent who conducted the sale and, therefore, had no personal knowledge of the transaction. The exclusion of this evidence was highly prejudicial to petitioner and precluded the submission of photostats and certified copies of deeds to or sales of similar and/or comparable lands."

■ No evidence of specific sales of similar or comparable land was excluded where the witness was able to testify from personal knowledge. Where the knowledge of the witness was derived from the seller or buyer or others, it was excluded, the holding being that such seller or buyer or other person having personal knowledge should be called, permitting cross examination by the Landowners. The cases cited by the Government support the view that evidence of sales of comparable lands is admissible, but I find nothing therein to support the Government's view that hearsay evidence is admissible.[10] The motion also mentions photostats and certified copies of deeds, the submission of which by the Government was "precluded" and which presumably were not offered in evidence. If such photostats and copies were not offered, the Government is, of course, not in position to complain.

4. There is complaint with respect to the testimony of the landowners' witnesses Carl Ehman, J. G. Miller, Ben F. Greenwood, Harry Richards, and R. W. Gillette, as follows: "The Court erred in allowing the jury to consider the testimony of the witnesses Carl Ehman, J. G. Miller, Ben F. Greenwood, Harry Richards and R. W. Gillette, as the evidence clearly showed that such witnesses were not familiar with

---

or approximately $85 per acre. They found Tract 55 containing 192.3 acres to be of the value of $17,272, or approximately $89 per acre.

[9] An excerpt from the charge is as follows:

"In this court the Judge may comment on the evidence if he sees fit to do so, but if I say anything to you about the evidence you will understand that I am not undertaking to interfere with your function of finding the facts, nor to direct you in finding the facts, but that I am only undertaking, if I can, to be of some assistance to you in reaching a conclusion in the case.

"I will say this about the case: I don't want this jury to go off half cocked and bring in a verdict here that is more than these people are entitled to, more than this land is worth. On the other hand, I don't want you to go off half cocked in the other direction and bring in a verdict that is less than these people are entitled to. That is as far as I care to go; as far as I ought to do, but I want you to take all this evidence of all these witnesses, evidence that took a week or more perhaps to put on, and give careful consideration to all of it, consideration to the credibility of the witnesses and the weight to be given their testimony and find a verdict that is right in the sight of God and man in this case."

[10] The Government cites: United States v. Meyer, 7 Cir., 113 F.2d 387; Lanquist v. Chicago, 200 Ill. 69, 65 N.E. 681; Cobb v. Boston, 112 Mass. 181; Sawyer v. Boston, 144 Mass. 470, 11 N.E. 711.

and did not know the condition of any of the lands involved herein at or before the date of taking, January 10, 1942, and none of said witnesses had appraised the land until about two or three weeks before they testified in the case."

■ All these witnesses showed themselves sufficiently qualified to permit their testimony as to values to go to the jury. If the Government's statement of objections to their testimony is borne out by the record, the matter is one going to its weight, and not its admissibility. The weight to be given their testimony was for the jury. Atlantic Coast Line v. United States, 5 Cir., 132 F.2d 959, 964.

5. There is also this complaint by the Government:

(a) "The Court erred in admitting the testimony of the witness Leon Miles on his direct examination as to the revenue, income and profits realized and derived from Tract No. BR-49 over a period of two or three years immediately preceding the date of taking, January 10, 1942, such testimony being highly prejudicial to petitioner, and such revenue, income and profits were highly speculative, conjectural, uncertain and were dependent upon a business conducted on such tract, and in which capital investments, labor, management, trading and skill were and are contributing factors.

"The Court further erred in admitting such testimony for the reason that such revenue, income and profits were not derived from the land in question, but were realized from a business conducted thereon, and are, therefore, highly speculative, conjectural and highly prejudicial to the rights of petitioner herein."

(b) "The Court erred in admitting the testimony as to past revenues alleged and claimed to have been realized by the owners of Tracts Nos. BR-46, -49 and -55, measured in dollars, from the sale of crops, products and produce derived from the business of farming, such income being too uncertain and speculative in character in determining value, same being dependent upon weather conditions, good husbandry, skill, trading ability and management on the part of the owners."

(c) "The Court erred in admitting answers by expert witnesses of the owners of Tracts Nos. BR-49 and -55 to improperly worded hypothetical questions propounded on direct examination as to revenue produced by the land when there was no evidence that the land itself produced such revenues, but the evidence showed that such revenue was derived from the operation of a dairy busines conducted on such lands."

(d) "The Court erred in admitting the testimony of the witness Leon Miles on his direct examination that his father, Tim Miles, the owner of Tract No. BR-49, had to sell and dispose of his dairy cows and restrict his business activities conducted on the land, such testimony being highly prejudicial to petitioner, and such damage, if any, would be consequential and is not to be compensated for in the taking of land under eminent domain."

■ There was evidence of revenue or income produced by the land, but I recall no evidence of profits. If there were such, I think its consideration was withdrawn from the jury by the giving of Government's Requested Charge No. 5.[11] Likewise by the same charge any evidence as to the sale by Miles of his dairy cows and the restriction of his business activities on the land is withdrawn.

■ The evidence admitted with respect to revenue and income showed the adaptability of the land for dairying, farming, etc., which is an element which the owner of the land is entitled to have go to the jury and have the jury consider in determining the value. This view is sustained in Mitchell v. United States, 267 U.S. 341, 344, 45 S.Ct. 293, 294, 69 L.Ed. 644, cited by the Government, where it is said: "The

[11] Government's Requested Charge No. 5 is as follows: "The owner of property or interests therein may sustain losses by reason of being required to surrender possession of property at a time when said party would not have otherwise voluntarily given possession of the same. Such losses or items of expense have no relation to the market value of the property and should not be considered by you either directly or indirectly. You should give no consideration to the following: Inconvenience and expense of moving personal property and installing it in a new location; loss from forced sale of personal property at a low price; loss of profit, either present or future; destruction or loss to the business owing to inability to find a suitable site other than the land taken; increased cost of acquiring additional property; cost of representation by attorney or attorneys; that is, expense that the owner may be put to."

special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain. Boom Co. v. Patterson, 98 U.S. 403, 408 [25 L.Ed. 206], New York v. Sage, 239 U.S. 57, 61, 36 S. Ct. 25, 60 L.Ed. 143."

This view is also sustained in City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143, and in Boom Co. v. Patterson, 98 U.S. 403, 404, 25 L.Ed. 206. The evidence as to income and revenue from the land was not profits from a business such as is discussed in United States v. Meyer, 7 Cir., 113 F.2d 387, nor is the case here such as is Bothwell v. United States, 254 U.S. 231, 41 S.Ct. 74, 65 L.Ed. 238, both of which are cited and relied upon by the Government. The distinction between income, revenue, etc., and profits from a business is quite clearly stated in Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 100, cited by the Government. See also Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236; Jacobs v. United States, 290 U.S. 13, 17, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; Atlantic Coast Line v. United States, 5 Cir., 132 F.2d 959, 962, Chicago, B. & Q. R. Co. v. North Kansas City Develop. Co., 8 Cir., 134 F.2d 142, 145; State v. Carpenter, 126 Tex. 604, 89 S. W.2d 194; Lower Colorado River Authority v. Hughes, Tex.Civ.App., 122 S.W.2d 223.

6. There is this complaint by the Government: "The Court erred in permitting the Jury to consider testimony of mental hazards caused by the existence of the dam, when the evidence clearly showed that such testimony would serve to increase the severance damage in favor of the owners, and that such hazards were based upon a fanciful and imaginary fear, too speculative and conjectural in nature to be submitted to the jury, especially in the light of the testimony of the Government's expert witnesses, H. R. Jensen and Norman Brown, both being licensed practicing civil engineers."

■ On the issue of damages to tracts remaining by the taking of the tracts taken, evidence was offered by landowners and admitted to the effect that the value of the tracts not taken was depreciated by the fact that prospective purchasers thereof would fear harm or danger from the dams or levees erected by the Government, etc. I thought then, and think now, that such evidence was admissible. It was for the jury to determine the weight to be given it in the light of all the evidence, including the testimony of the two expert Government witnesses named.

7. There is this complaint by the Government: "The Court erred in admitting the testimony of the witnesses Carl Ehman, J. G. Miller, Ben F. Greenwood, Harry Richards and R. W. Gillette on direct examination as to their respective opinions of the value of the buildings and improvements located on Tracts Nos. BR-49 and BR-55, as well as on the acreage remaining to the owners of said tracts, as a separate unit, because the proper measure of petitioner's liability would be and was the amount, if any, that each of said tracts and/or the remaining acreage was enhanced or increased in value by such buildings and improvements, and without regard to separate values of such buildings and improvements as separate units."

■ The jury was asked whether the tracts and improvements thereon that remained after the taking of Tracts 49 and 55 were increased or diminished in value by such taking, and if so, how much. The testimony of the witnesses complained of was admissible to show the value of such tracts and improvements, and such witnesses could testify either as to the value of the land or the improvements separately or together.

8. The Government complains as follows: "The Court erred in submitting special interrogatories to the jury under Rule 49(a) of the Federal Rules of Civil Procedure."

■ The only issues under the Texas and Federal Statutes hereinbefore discussed were as to the value of the tracts taken and the damages, if any, to the tracts remaining. No general verdict could have been rendered. There were no exceptions by the Government either before, at the time of, or after the submission of the charge. The Government's complaint does not set forth in what manner, if at all, the Government has been injured by the case being submitted under Rule 49(a). Such complaint is not meritorious.

9. The Government also complains as follows: "The Court erred in not inform-

ing counsel for petitioner of the action the Court would take relative to submitting requested instructions to the jury prior to the argument of counsel, as required under Rule 51 of the Federal Rules of Civil Procedure."

■ At the close of all the evidence, the jury was retired, and counsel informed that the Court had not had time to fully study all requested instructions, but that it was the purpose to submit the case under Rule 49(a). There was a general discussion of the questions and issues to be submitted. The Court's understanding was that all counsel agreed to proceed with the argument—certainly they did proceed without objections or complaint. When a conclusion on the requested instructions was reached, counsel was advised, and they were given their exceptions. No statement is made, either in the Government's motion or brief filed in support thereof, showing in what manner the Government was injured by this procedure. Under these circumstances, the complaint is without merit.

10. The Government complains as follows: "The Court erred in refusing that part of Petitioner's Requested Instruction No. 1, which reads as follows: 'It (fair cash market value) is the sum of money which would be agreed upon in an intelligent bargaining procedure, and not the value arrived at upon a so-called capitalization method. However, net income, from a property itself is a fair check as to its market value but not so satisfactory even for that purpose where its income is produced by a business conducted upon it, where other capital investments, labor and management are contributing factors to such income.'"

■ The first part of Charge No. 1 was given, but the quoted part refused. If there was evidence bringing "capitalization methods," etc., into the case, I think there was no error in refusing this instruction. United States v. Waterhouse, 9 Cir., 132 F.2d 699.

11. The Government also says: "The Court erred in refusing to give to the jury Petitioner's Requested Instructions Nos. II, III and VI."

(a) Requested Instruction No. II is as follows: "You are not permitted to speculate as to values after January 10, 1942."

■ The evidence as to values was confined to the date of taking, January 10, 1942, and the meaning of the requested instruction is not clear. Presumably it refers to the consideration by the jury of visionary or imaginary uses, and with respect thereto, the Court charged the jury, among other things, as follows: "In considering values you may consider any and all reasonable use or uses to which the property may be put, but neither present nor future visionary nor imaginary uses. I repeat that neither the present nor future visionary nor imaginary values or uses should be considered, but, of course, you are the judges of what are or what are not visionary and imaginary uses and values."

I find no error here.

(b) Requested Instruction No. III is as follows: "In determining the fair market value of property upon which is located improvements, the existence of such improvements can be taken into consideration in determining the compensation so far as they affect the market value of the land, but the market value of the land, as land, remains the test and there can be no recovery for such improvements valued separately as items additional to the land. In determining the value of the property taken, you should consider the improvements only to the extent that they add to the value of the land."

■ In instances where there were improvements upon property taken, the jury was asked to find the reasonable market value as of January 10, 1942, not of the land alone, but of both the land and improvements. The jury was also asked to find whether the land and improvements of the tract that remained had been damaged, etc. The witnesses during the trial were permitted to testify as to the value of the land without the improvements, and the value of the improvements without the land, and as to the value of both land and improvements, but, as stated, the jury was required to find the value of both land and improvements.

This was not error.

(c) Requested Charge No. VI is as follows: "Where only a part of a larger tract is taken, you are to compute the value of the whole tract immediately before taking and subtract therefrom the value of the part remaining."

■ I think the jury was free to adopt the method suggested, but it would have

been error to confine them exclusively to that method.

12. The Government also says: "The Court erred in refusing to give to the Jury that part of Petitioner's Requested Instruction No. IV which reads as follows: 'The prospective or speculative value of the land from possible improvements or prospective uses cannot be considered by you; the value must be actual and not speculative, nor merely possible value. It is not proper, therefore, to consider how the property might possibly be improved, nor the cost of such improvements; nor can you consider what the probable value of the land would be if this or that improvement were placed upon it; nor can you consider the intention of the owner to make improvements even though you should find such intention to exist.' "

The instructions as worded are inaccurate, and the jury was cautioned more than once not to consider evidence of imaginary or speculative values.

I think the Government and the land-owners have had a fair trial, and that there were no errors affecting the substantial rights of the parties, and that the values found by the jury are sustained and supported by the evidence. The Government's motion for new Trial is therefore, denied.