UNITED STATES of America,
Plaintiff,

v.

229.34 ACRES OF LAND et al.,
Defendants.

Civ. No. 3179.

United States District Court
N. D. Indiana,
South Bend Division.

Oct. 12, 1965.

Kenneth P. Fedder, Asst. U. S. Atty., South Bend, Ind., for the Government.

Alexander Campbell, Campbell, Livingston, Dildine & Haynie, Fort Wayne, Ind., J. Philip Burt, Campbell, Livingston, Dildine & Haynie, Fort Wayne, Ind., for defendants.

GRANT, Chief Judge.

This action in condemnation was brought by the United States under the authority of the Act of Congress approved February 26, 1931 (46 Stat. 1421, 40 U.S.C. § 258a), and acts supplementary thereto and amendatory thereof, and

under the further authority of the Acts of Congress approved April 24, 1888 (25 Stat. 94, 33 U.S.C. § 591), and March 1, 1917 (39 Stat. 948, 33 U.S.C. § 701), which acts authorize the acquisition of land for flood control projects; the Act of Congress approved July 3, 1958 (Public Law 85–500, 72 Stat. 297), which act authorizes the construction of the Salamonie Reservoir, and the Act of Congress approved October 24, 1962 (Public Law 87–880, 76 Stat. 1216), which act appropriated funds for such purpose. The complaint herein was filed March 19, 1963.

In its complaint, the Government recited that the use for which the property is to be taken is for flood control purposes and other uses incident thereto. The property involved has been selected by the Secretary of the Army for acquisition by the United States for use in connection with the establishment of the Salamonie Reservoir on the Salamonie River in Indiana and for such other public uses as may be authorized by Congress or by Executive Order.

The estate to be taken for said public use in this action consists of: (a) the fee simple title to the tracts numbered 106, 107, 110, and 118; (b) a perpetual and assignable easement with respect to the tracts numbered 110–E–1 and 110–E–4; and (c) a temporary easement with respect to the tracts numbered 110–E–2 and 110–E–3.

Thereafter, on March 3, 1964, the Government filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the pleadings conclusively show that the Government is entitled to a judgment as a matter of law as to Tract Nos. 106, 110, and 118. The basis of said motion were certain "options" for the purchase of fee simple title (copies of which were appended to the motion as exhibits thereto) going to the aforementioned three tracts, which, the Government contended, were binding upon the prior owners as valid contracts to sell real property. The Government's allega-

tions on the motion for summary judgment were:

(a) " * * * (S)ince Arthur V. Rehak and Madge E. Rehak, his wife, on June 7, 1962, executed an option for purchase of fee simple title to Tract Number 106, Exhibit A, agreeing to accept the sum of $3,000.00 for said purchase, which option was accepted on behalf of the United States of America on June 13, 1962, there can be no objection to the acquiring of the fee simple title to Tract Number 106, or to the amount of the just compensation therefor."

(b) " * * * (S)ince Ray H. Craig and Esther M. Craig, his wife, on June 6, 1962, executed an option for purchase of fee simple title to Tract Number 110, Exhibit B, agreeing to accept the sum of $8,-000.00 for said purchase, which option was accepted on behalf of the United States of America, on June 13, 1962, there can be no objection to the acquiring of the fee simple title to Tract Number 110, or to the amount of just compensation therefor."

(c) " * * * (S)ince Lewis A. Harmon and Kathryn Harmon, his wife, on June 19, 1962, executed an option for purchase of fee simple title to Tract Number 118, Exhibit C, agreeing to accept the sum of $12,000.00 for said purchase, which option was accepted on behalf of the United States of America on June 26, 1962, there can be no objection to the acquiring of the fee simple title to Tract Number 118, or to the amount of the just compensation therefor."

The Government then contended that an option which has been timely accepted and was not obtained by fraud or force is valid and binding on those who have executed it under a contractual relationship.

In their reply to the Government's motion, the prior owners of the three tracts admitted the instruments in ques-

tion were indeed "options", but contested the Government's reading of the legal effect of same. Thus resisting the motion for summary judgment, the defendants contended, first, that the "options" were without legal consideration and were therefore unenforceable. Secondly, it was contended that the "options" were revoked and rescinded by defendants prior to acceptance by the United States and were unenforceable as valid contracts. And finally, defendants contended that said "options" were unenforceable for the reason that they were acquired by the Government by fraud and misrepresentation.

On March 19, 1965, hearing was had on the issues of revocation and fraud, issues the defendants asserted were unresolved and pertained to material facts thus precluding summary judgment for the United States. At said hearing, the parties were present and represented by counsel, evidence was presented, all material witnesses testified as to the transactions in question, and arguments of counsel were heard. At the close of the hearing, the Court ordered memoranda to be submitted on the issues involved, and the matter was taken under advisement.

Before setting forth the Court's findings of fact and conclusions of law with respect to these issues, it is well that the Court first state what is ripe for disposition at this time in light of the posture the case has taken since the filing of the Government's motion for summary judgment. We do this for the reason that a review of the file clearly indicates that the parties hold divergent views as to the nature and scope of the hearing of March 19, 1965.

In this respect, defendants have urged that, inasmuch as the matter was before the Court on a motion for summary judgment, the Court was limited to determining whether or not a material issue of fact was outstanding. This contention means that, in defendants' view, the testimony heard and the evidence received during the hearing of March 19, 1965, which incidentally took practically the entire day to complete, went only to the

question of whether or not the motion for summary judgment should be denied for the reason that there then existed an unresolved material issue of fact. Defendants further contend that, because the testimony of the parties was largely in conflict, a factual issue was conclusively shown to exist. This being so, the Government's motion for summary judgment should be denied and "this case should be docketed for trial to a jury."

On the other hand, the Government contends that the hearing of March 19, 1965, was a "trial", pursuant to Rule 71A (h) of the Federal Rules of Civil Procedure, of the issues of fraud, consideration, and rescission. The Government would have the Court hold that the question now before it is not whether a factual issue exists, but—assuming such to be the case—whether the defendants have proved their allegations of fact by a preponderance of the evidence. The hearing of March 19, 1965, so the Government concludes, clearly indicates that the defendants have not proved the invalidity of the "option" agreements, and it is urged that the Court enter judgment accordingly.

■ After careful evaluation of the respective positions of the parties on this point, the Court is of the considered opinion that it is that of the Government that should be sustained. In so holding, we note that if the defendants' view is adopted as to the nature and scope of the hearing held in this Court on March 19, 1965, the subsequent trial of the issues of fraud, consideration, and rescission would consist of an exact duplication of all that went on in the hearing itself. This is so because of the fact that such a "trial" of such issues must be before the Court without jury. Subsection (h) of Rule 71A, which Rule governs the procedure applicable to actions for the condemnation of property, states, in part: "Trial of all issues (other than that of just compensation) shall otherwise be by the court." Rule 71A(h), F.R.C.P.

The Court is compelled to this conclusion for the further reason that, at the hearing of March 19, 1965, we made it

quite clear that should the defendants fail to carry the burden of proof on the issues outstanding so as to defeat the executed "options", the Court would grant the Government's motion for summary judgment. As the Court stated at the hearing, if the "options" were found not binding on the defendants, the future proceeding would be a jury trial on the sole issue of compensation. Surely this Court was not merely deciding whether an issue of fraud or rescission existed for a future determination by a jury, nor could the hearing of March 19, 1965, properly be considered as such. First of all, it was clear practically from the outset of the hearing that fraud and rescission were "in issue" from the fact that the testimony of the parties was in conflict; if the Court were only to decide whether an issue existed it would have been entirely superfluous to continue what ultimately became the fullest of evidentiary hearings. Secondly, we could not have been sitting to decide whether an issue existed for a later jury determination, nor could the hearing properly be construed as such, for the reason that there exists no right to a jury in the trial of such issues in a condemnation proceeding.

Thus, at the time of the hearing of March 19, 1965, the parties were fully apprised of the nature and scope of same. The parties were informed that, should the defendants fail in their proof, judgment would be entered for the Government; and, if the defendants succeeded, the cause would be set for trial on the sole issue of compensation. Therefore, even though it now appears that the Court technically erred in stating that a judgment for the Government, if warranted, would be entered on the motion for summary judgment under Rule 56 rather than on the trial of the issues under Rule 71A(h), the parties all along knew that said judgment would be a final judgment and that what the Court was deciding was whether or not rescission and/or fraud existed to defeat the previously executed "option" agreements.

Accordingly, the Court now sets forth its Findings of Fact and Conclusions of Law on the issues of fraud, rescission, and consideration as described above. The Court reiterates that the Findings and Conclusions to follow are based upon (a) the briefs of the respective parties in support of and in opposition to the Government's motion for summary judgment; (b) the hearing of March 19, 1965, including the testimony and evidence adduced therein and the oral arguments of counsel; and (c) the briefs filed with the Court subsequent to the hearing as the Court directed.

*Findings of Fact and Conclusions of Law*

█ (1) As to the issue of rescission or revocation, the Court finds that defendants failed to show by a preponderance of the evidence that the "option" agreements, considered here as continuing offers to sell on the part of defendants, were in fact rescinded or revoked prior to acceptance by the United States. (At this point, the distinction not yet having been made, the Court takes note that the issue under discussion is better described as one of revocation of an offer to sell rather than rescission of an executed contract. The elements of rescission are clearly not present in the case, nor was there any evidence adduced at the hearing to such effect.)

█ The evidence showed that an "Offer to Sell Real Property" (which document has been consistently referred to as an "option" by the parties), executed by the defendants Arthur V. Rehak and Madge E. Rehak on June 7, 1962, the subject of which was Tract No. 106, was accepted on behalf of the United States by Fred Morgan, Chief, Real Estate Division, Department of the Army, on June 13, 1962. (Government Exhibit #1.) The only evidence going to show that these defendants intended to revoke their offer of June 7, 1962, was that contained in a letter, dated June 25, 1962, signed by Arthur and Madge Rehak, and addressed to Honorable J. Edward Roush, Congressman from the 5th Congressional District of Indiana. (Government Ex-

hibit #5.) Also admitted into evidence was a letter from Congressman Roush to Mr. and Mrs. Rehak, dated June 27, 1965, acknowledging receipt of their letter of June 25th and stating that he had "discussed this matter with an official of the Corps of Engineers" who had "agreed to make a complete investigation of the matter." (Defendant's Exhibit E.) Even admitting that this letter of the Rehaks to Congressman Roush would constitute a revocation of their offer to sell, it is clear that it could not legally operate as such for the reason that it came some twelve days after the Government accepted the offer at which time, of course, a contract was consummated between the parties.

With respect to Tract No. 110, the evidence showed that a similar "Offer to Sell Real Property" was executed by the defendants Ray H. Craig and Esther M. Craig on June 6, 1962, which offer was accepted by the United States on June 13, 1962, by the same Fred Morgan as agent therefor. (Government Exhibit #2.) The only evidence going to show that these defendants intended a revocation of their offer of June 6, 1962, was that contained in a letter, dated June 25, 1962, signed by Mrs. Ray H. Craig, again addressed to Congressman Roush. (Government Exhibit #6.) Also admitted into evidence was a letter from Congressman Roush to Mr. and Mrs. Craig, dated August 13, 1962, which apparently enclosed a copy of a letter the Congressman had received from one Colonel Phelan of the Office of the Chief of Engineers, Department of the Army. (Government Exhibit #4.) The letter of Congressman Roush further indicated that Colonel Phelan had caused an investigation to be undertaken into the matter of the acquisition of the Craigs' land. It is clear that the letter of Mrs. Craig to Congressman Roush cannot legally operate as a revocation of the previously made offer to sell for the reason that the Government's acceptance had intervened to effect a binding bilateral contract.

The defendants Lewis A. Harmon and Kathryn Harmon signed and executed a similar "Offer to Sell Real Property" on June 19, 1962. The offer was accepted by the United States on June 26, 1962. (Government Exhibit #3.) There was no evidence that these defendants ever intended to revoke their offer to sell, and, unlike their co-defendants, Mr. and Mrs. Harmon did not undertake to write their Congressman.

■■ (2) As to the issue of fraud, the Court finds that defendants failed to show by a preponderance of the evidence (that being the burden of proof under Indiana law, Automobile Underwriters, Inc. v. Smith, 731 Ind.App. 454, 166 N.E. 2d 341, 348 (Ind.App.1960)) that the "option" agreements were in fact acquired by the Government by fraud and misrepresentation.

Defendants' allegations of fraud and misrepresentation were several: that the Government's agent and negotiator, Emerson T. Calvert, represented to defendants that the United States was ready and willing to pay $2,850.00 for Tract No. 106, $7,500.00 for Tract No. 110, and $10,400.00 for Tract No. 118, when in truth and in fact said agent and negotiator had authority from his superiors to pay $3,000.00 for Tract No. 106, $8,000.00 for Tract No. 110, and $12,000.00 for Tract No. 118; that said agent and negotiator for the Government represented to defendants that he would "try his best" to secure for them—although he could not assure them it was possible—the sums of $3,000.00 for Tract No. 106, $8,000.00 for Tract No. 110, and $12,000.00 for Tract No. 118, when in truth and in fact said agent and negotiator already had authority from his superiors to pay said sums; that said agent and negotiator represented to the prior owners of Tracts Nos. 106 and 110 that the proffered purchase prices for said Tracts of $3,000.00 and $8,000.00, respectively, constituted only the purchase price of the real estate, and that damages to the residue of the property and improvements would be in addition to said sums and would be obtained by said prior own-

ers at a later date, which representation was clearly contrary to truth and fact; that said agent and negotiator misrepresented to defendants that in the event the United States brought a suit in condemnation against them said defendants would bear all court costs, the costs of all appraisals, the costs for obtaining jurors, and would receive less than he, as agent and negotiator for the United States, was then offering; and that said agent and negotiator for the Government stated to defendants that signing the "options" would not be binding on either the United States or the property owners since he "was not certain" that the Government would accept said "options".

■ Defendants' first specification of fraud and misrepresentation is based upon the admitted fact that the Government negotiator did not offer the top appraisal figure in his opening negotiations, but rather offered a sum somewhat below the highest amount authorized as was the Government's practice. Defendants submit that "a United States Government negotiator should be something more than a used car salesman." The Court, however, is loathe to conclude that this fact alone warrants a finding of fraud on the part of the Government and we find no basis in the law for such a conclusion. When taking land for public purposes, it is, of course, the constitutional duty of the United States to render just compensation therefor. U.S.Const. Amend. V. "Just compensation" has been defined as "the full and perfect equivalent in money of the property taken", by which "the owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943). While no set standard is to be applied in all cases to determine just compensation, the concept of "market value" was early adopted, and has been retained, by the courts as a practical guide. United States v. Miller, supra at 374, 63 S.Ct. 276. Thus, Mr. Justice Holmes concluded in City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 26,

60 L.Ed. 143 (1915), that the owner is entitled to receive the amount which "it fairly may be believed that a purchaser in fair market conditions would have given." Implicit in the concept of "market value", moreover, is that such will be determined, in part at least, as the result of bargaining and negotiations between the parties. Indeed, it has even been held, and quite properly so, that the duty imposed upon the United States by the Fifth Amendment does not "prevent the United States from making an advantageous bargain with a land owner provided, of course, that it does so in a fair, honest and above board transaction." Harney v. United States, 306 F.2d 523, 531 (1st Cir. 1962). This Court cannot find that, by making initial offers which were $150.00, $500.00, and $1,600.00 below the highest amounts authorized for the three tracts respectively, the Government acted unfairly, dishonestly, or fraudulently.

■ From the foregoing it follows that, if the Government, when engaged in acquiring property for public purposes can *negotiate* the transaction, the Government need not disclose at the outset its highest appraisal or authorization figure. Therefore, a Government negotiator should not be compelled to divest himself of all ability to negotiate by initially making his top offer or of admitting perfunctorily that any specific demand of the land owner would be acceptable to the Government. Accordingly, the defendants' second specification of fraud cannot be sustained.

The remaining three specifications of fraud, based on certain representations alleged to have been made to defendants by the Government negotiator, were supported only by the testimony of the defendants themselves. This testimony was controverted by that of Mr. Calvert, the negotiator involved. There being a conflict in the only evidence presented on these questions, the Court can only say that defendants failed to show by a preponderance of the evidence that they should be believed and the Government's testimony not believed. At the hearing

of March 19, 1965, the Court had the benefit of evaluating not only the testimony but the demeanor of all the parties, and we did so in light of the respective interests, prejudices, and biases of all concerned. The Court also had the opportunity to hear the testimony of Mr. Fred Morgan, Chief of the Real Estate Division of the Office of District Engineer, who said that at the request of his superiors he participated in an independent investigation to determine whether any fraud existed in the acquisition of the "options" here involved and that the results of the investigation showed conclusively that no fraud or misrepresentation did exist. On the evidence, the Court is of the considered opinion that defendants cannot prevail.

(3) With respect to the issue of consideration for the "option" agreements, the Court is of the opinion that our holding on the issue of revocation renders this issue moot. For if consideration was lacking as to what the parties have denoted as "option" agreements, then surely said "options" are to be given the interpretation of and properly be considered as continuing offers for a fixed period of time. In fact, the purported "options"—evidenced by an instrument, a standard Government form, bearing the marking "ENG Form 42"—carry the printed title of "Offer to Sell Real Property". Therefore, as continuing offers to sell, they require no consideration but became executed bilateral contracts if accepted within the time specified, provided the offers were not previously revoked. This having been determined, the Court need not reach the question of consideration for an "option".

### Conclusion

Therefore, for the reasons set forth above, and in accordance with the foregoing Findings of Fact and Conclusions of Law, the Court finds the instruments contained in Government Exhibits #1, #2, and #3 to be valid and enforceable contracts for the sale of real property by the respective defendants to the United States.

Accordingly, it is hereby ordered, adjudged and decreed that judgment be entered for the plaintiff, United States of America, and against the defendants, Arthur V. Rehak and Madge E. Rehak as to Tract No. 106, Ray H. Craig and Esther M. Craig as to Tract No. 110, and Lewis A. Harmon and Kathryn Harmon as to Tract No. 118. Inasmuch as trial has been had on all the issues, the motion of the United States for summary judgment filed March 3, 1964, has been rendered moot and the same is ordered dismissed.